**Gracemarie TOMASELLI
and Joyce Tomaselli**

v.

**Donald W. BEAULIEU, et al.**

**Civil Action No. 08–10666–RWZ.**

United States District Court,
D. Massachusetts.

Aug. 30, 2013.

Scott F. Gleason, Gleason Law Offices, P.C., Haverhill, MA, for Gracemarie Tomaselli and Joyce Tomaselli.

Thomas W, McEnaney, Janelle M. Austin, Kopelman & Paige, PC, Boston, MA, for Donald W. Beaulieu, et al.

*ORDER ON OBJECTIONS TO THE RE-PORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE*

ZOBEL, District Judge.

Based upon a careful and exhaustive analysis of the facts and the applicable law of this exhausting case, the Magistrate Judge recommends allowance of defendants' motion to dismiss. Plaintiffs object to the entirety of the Report and Recommendation ("R & R") (Docket # 173); defendants only object to the recommendation that the court decline to exercise pendent jurisdiction over the state law claims.

Plaintiffs' objections (Docket ## 175 and 177) are overruled.

Defendants' objections (Docket # 176) are sustained with respect to the recommendation that the court not decide the state claims on the merits. Given the age of the underlying dispute, the effort expended in litigating it by all parties and the court, and the fact that the Magistrate Judge did address the merits of the state law claims, it is appropriate that the court exercise its discretion to reach a final judgment on the entire dispute. Moreover, this court is in full agreement with the recommendations pertaining to the merits of the state claims. Accordingly, the mo-

tion to dismiss the complaint is allowed as to all claims contained therein.

Judgment may be entered dismissing the complaint with prejudice.

## REPORT AND RECOMMENDATION ON THE MUNICIPAL DEFENDANTS' MOTION TO DISMISS

DEIN, United States Magistrate Judge.

## I. INTRODUCTION

This action arises out of a long-running dispute between the plaintiffs, Gracemarie Tomaselli and Joyce Tomaselli, and the Town of Salisbury, Massachusetts, relating to a sewer betterment assessment that was imposed by the Town in 1992 and the manner in which the Town calculated the related sewer user fees.[1] This matter is presently before the court on the motion of the Town and its current and former officials (the "Municipal Defendants")[2] to dismiss the Second Amended Complaint pur-

suant to Fed.R.Civ.P. 12(b)(4), 12(b)(5) and 12(b)(6). (Docket No. 158).

■ By their motion, the Municipal Defendants are seeking the dismissal of all the claims asserted against them in the Second Amended Complaint (Docket Nos. 33 & 43). Specifically, the Tomaselli's have asserted claims pursuant to 42 U.S.C. § 1983 alleging violations of their First, Fifth and Fourteenth Amendment due process and equal protection rights and their comparable rights under the Massachusetts Declaration of Rights (Counts I–V),[3] claims of unfair or deceptive acts or practices in violation of Mass. Gen. Laws ch. 93A (Counts VI and VII), claims that the defendants engaged in or conspired to enter into a criminal enterprise in violation of the Racketeer Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 (Counts VIII and IX), and a claim of conspiracy to commit and the commission of conversion, defamation, intentional infliction of emotional distress, abuse of process, invasion of privacy, intentional in-

1. This action was brought against many parties, including Town Counsel defendants, and other attorneys who represented the Town in various proceedings (the "Coppola defendants"), as well as the Municipal Defendants who are the subject of this R & R. The matter against the Municipal Defendants was stayed pending the plaintiffs' appeal of the dismissal of the Second Amended Complaint insofar as it related to the Town Counsel defendants. After that dismissal was affirmed on appeal, the Tomasellis filed a petition for certiorari to the United States Supreme Court, which was denied on October 1, 2012 (Docket No. 167). Thereafter the plaintiffs, now through counsel, filed an opposition to the Municipal Defendants' pending motion to dismiss.

2. The Municipal Defendants include Donald W. Beaulieu, Henry Richenburg, Jerry V. Klima, Edwin L. Hunt, Fred Knowles, Charles F. Geary, Charles A. Takesian, Barbara S. Thomas, Hattie H. Stoltfus, Freeman Condon, James Pollard, Robert Carroll, Donald Levesque, Christine D. Caron, C. Sidney Pike, Frances Cloutier, Cheryl L. Gillespie, Neil J.

Harrington and Michael Basque, individually and in their official capacities, and the Town of Salisbury. The defendants contend that not all of these defendants have been properly served. That issue, however, does not need to be resolved in light of this court's recommendation that the Complaint be dismissed.

3. The parties agree that each of these claims has been brought pursuant to 42 U.S.C. § 1983, although Counts I–IV merely identify the constitutional right that has allegedly been violated, and only Count V purports to state a claim under 42 U.S.C. § 1983. There is no direct cause of action by an individual for a constitutional violation; rather, such a claim must be brought under 42 U.S.C. § 1983. *Wilson v. Moreau*, 440 F.Supp.2d 81, 92 (D.R.I.2006), and cases cited. *See also Boveri v. Town of Saugus*, 113 F.3d 4, 6 (1st Cir.1997) ("It is by now axiomatic that 42 U.S.C. § 1983 supplies a private right of action against a person who, acting under color of state law, deprives another of federally secured rights.").

terference with advantageous business relations, misrepresentation and negligent misrepresentation (Count X).

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Municipal Defendants' Motion to Dismiss be ALLOWED.

## II. STATEMENT OF FACTS [4]

### Scope of the Record

When ruling on a motion to dismiss, the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reasonable inferences. *See Cooperman v. Individual, Inc.*, 171 F.3d 43, 46 (1st Cir.1999). "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir.2001). "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" *Id.* (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993)). In the instant case, the parties have attached various documents to their pleadings. To the extent the documents meet this exception they will be considered herein. Otherwise, they will not be considered, as this court is not converting the pending motion into a motion for summary judgment.

This statement of facts focuses on those facts that are relevant to the Municipal Defendants. Additional facts can be found in this court's Reports and Recommendations on Town Counsel's Motion to Dismiss and on the Coppola Defendants' Motion to Dismiss (Docket Nos. 90 and 91).

### Background [5]

The Tomasellis own real property located in Salisbury, Massachusetts. (Compl. ¶ 1). The plaintiffs allege that from 1969 until 1981, the Town entered into a series of agreements with both state and federal agencies to secure funding for sewer rehabilitation projects and the construction of a municipal water treatment facility in Salisbury. (*Id.* ¶¶ 14–15). This work was done to satisfy a consent judgment the Town had entered into on June 12, 1969 in connection with charges of violations of environmental laws and regulations. (*Id.* ¶ 16). Salisbury's agreements required certain costs to be covered by the Town, which was accomplished by charging Salisbury residents a betterment fee and sewer usage fees, which were approved by Town votes in 1990 and 1992. (*Id.* ¶ 33).

The 1992 vote authorizing the sewer betterment charges was held on January 27, 1992. (Defs. Ex. 4). On September 12, 1992, the Tomasellis opened a restaurant located at their property. (Compl. ¶ 42). On December 30, 1994, they were informed by the Town tax collector that their business licenses were being withheld for non-payment of taxes, and the restaurant was forced to shut down. (*Id.* ¶¶ 43–44). They have been fighting the better-

---

**4.** The facts are derived from the following sources: (1) Second Amended Complaint as corrected ("Compl.") (Docket Nos. 33 & 43); Defendants' Memorandum of Law ("Defs. Mem.") and Exhibits thereto ("Defs. Ex. ——") (Docket Nos. 163 & 159); and Plaintiffs' Opposition to Defendants' Motion to Dis-

miss Complaint ("Pls. Opp.") and Exhibits thereto ("Pls. Ex. ——") (Docket No. 168).

**5.** For clarity, the facts are based on both the Second Amended Complaint and on counsel's description of the plaintiffs' claims as found in Plaintiffs' Opposition.

ment assessment and sewer usage fees since then.

### Statutory Scheme

Since a general understanding of the statutory scheme relating to sewer charges is helpful in understanding the events that transpired in this matter, a brief overview will follow.

The betterment assessment at issue was a one-time fee earmarked for costs associated with construction of the sewer projects. *See* Mass. Gen. Laws ch. 80, § 1 (Assessment of cost of public improvements). By statute, municipalities may assess each parcel which receives the benefit of a public improvement a "proportionate share of the cost of such improvement." *Id.* According to the plaintiffs, they were charged a betterment fee of $15,500.00 in 1992, which they chose to amortize over twenty (20) years, payable annually, which has not been paid in full. (*See* Pls. Opp. at 3). The plaintiffs contend that they were wrongfully charged the betterment fee since it was not recorded and they were not aware of it when they purchased their property. (*Id.*; Compl. ¶ 30). In addition, the plaintiffs contend that the sewer project was, in fact, paid for through state and federal funds and not the Town, and that the betterment assessment is, in reality, an illegal tax. (Compl. ¶¶ 31–32). As detailed below, with respect to this latter contention the Tomasellis contend that they did not learn of the relevant facts until approximately 2005–2006.

Pursuant to Mass. Gen. Laws ch. 80, § 5, "[t]he owner of any real estate upon which betterments have been assessed may, within six months after notice of such assessment has been sent out by the collector, file with the [town] board a petition for an abatement thereof[.]"[6] There is a

right to appeal the refusal of the board to abate an assessment in whole or in part within 30 days of the adverse decision "by filing a petition for the abatement of such assessment in the superior court for the county in which the land assessed is situated." Mass. Gen. Laws ch. 80, § 7. In the alternative, a person aggrieved by the board's decision may appeal within 30 days of the adverse decision "to the county commissioners of the county in which the land assessed is situated." Mass. Gen. Laws ch. 80, § 10.

Sewer usage fees are charged for costs associated with the ongoing operation of the sewer system. (*See* Pls. Opp. at 3). *See* Mass. Gen. Laws ch. 83, § 16 (Charge for use of sewers). The plaintiffs contend that at the time they purchased their property, the title search and municipal lien certificate failed to disclose the existence of any outstanding charges, but that shortly after the closing they learned of an outstanding $5,320.92 sewer use fee that the seller paid after the closing. (Pls. Opp. at 3). According to the plaintiffs, "[i]t has become obvious the Defendants intentionally and fraudulently hid the excessive sewer user charges and the alleged special assessments from the Plaintiffs when the Plaintiffs purchased the property." (Compl. ¶ 39). In addition, the plaintiffs contend that instead of assessing such fees "in a fair and equitable manner based on actual water usage method[,]" the "Town has assessed sewer user fees in an arbitrary and discriminatory manner." (*Id.* ¶ 34).

The procedure for challenging a sewer usage fee is set forth in Mass. Gen. Laws ch. 83, §§ 16A–16G. Sewer usage fees that remain unpaid become a lien on the property, and the refusal of a board of assessors to issue an abatement is appeal-

---

**6.** The provisions of Mass. Gen. Laws. ch. 80 concerning the abatement process is made

applicable to sewer betterment assessments by Mass. Gen. Laws ch. 83, § 28.

able to the Appellate Tax Board ("ATB"). *Id.* Mass. Gen. Laws ch. 59, § 59 (made applicable to challenges to sewer usage fees by Mass. Gen. Laws ch. 83, § 16E) requires that an application for an abatement must be filed with the assessors within 30 days of the issuance of a tax bill containing the lien. An aggrieved party then has three months from the date of the assessor's denial of a request for abatement to file an appeal with the ATB. Mass. Gen. Laws ch. 59, § 64.

### Prior Litigation

As noted above, the plaintiffs were informed that their business was being shut down for non-payment of taxes in December 1994. The Tomasellis allege that other businesses were permitted to remain open despite tax arrearages. (Compl. ¶ 46). The Tomasellis' efforts to obtain relief through Town Board of Selectmen meetings were unsuccessful. (*Id.* ¶ 51).

In 1995, the bank holding their mortgage initiated foreclosure proceedings. (*Id.* ¶ 58). A foreclosure sale was scheduled for August 24, 1995, but was postponed until October 1995 due to improper notice, and eventually "avoided" by the plaintiffs' filing for bankruptcy protection. (*Id.* ¶¶ 59–60). During this time, on or about August 24, 1995, the defendants "in their official capacity" "admitted that Plaintiff's sewer use charges had improperly been calculated since the Plaintiff's [sic] purchased the property, using an arbitrary EQR rate instead of actual water consumption method as mandated by the sewer rules and regulations promulgated approximately in 1988 and the 1990 and 1992 town votes[.]" (*Id.* ¶ 59). Nevertheless, the Town allegedly abated charges for only one year, and never applied the credit due against their outstanding charges. (*Id.*). In addition, the plaintiffs contend that in 1995 they "discovered and informed" an assistant in the tax collec-

tor's office that several of their tax payments had improperly been applied to a period before their ownership of the property, but their account was never corrected. (*Id.* ¶ 65).

In 1997, the Tomasellis filed suit against the Town and the foreclosing bank in Essex Superior Court, challenging the sewer betterment and sewer usage charges. (*Id.* ¶ 61; Defs. Ex. 1). *See Tomaselli v. Town of Salisbury,* Essex Superior Court, C.A. No. 97–0481C, *dismissal affirmed,* 57 Mass.App.Ct. 1116, 786 N.E.2d 437, 2003 WL 1800027 (Apr. 7, 2003) (Table). Therein, the Tomasellis alleged that the Town failed to properly record or publicly disclose to purchasers of property the approved betterment charges; improperly calculated the sewer user charges and then refused to apply the reduced sewer user fee for the years prior to 1994 despite a recalculation by the Department of Public Works; and improperly revoked their Alcoholic Beverages license, without notice or hearing, for failure to pay the delinquent taxes. (Defs. Ex. 1 at ¶¶ 53–56, 59–60). Trial commenced in 2001, and the court granted the Town's motion for a directed verdict at the close of the plaintiffs' opening statement. *Tomaselli,* 57 Mass.App.Ct. at 1116, 786 N.E.2d at 437. The Massachusetts Appeals Court affirmed. *Id.*

In 1999, the bank again began foreclosure proceedings due to the outstanding taxes and sewer charges. (Compl. ¶ 62). On April 9, 2001, the Town published a Notice of Tax Taking against the plaintiffs in the local newspaper. (*Id.* ¶ 66). The Tomasellis filed an Application for Abatement of the Sewer Betterment on July 31, 2001, alleging therein that the 1992 betterment was void as against them since they had purchased their property without notice of the unrecorded assessment. (*Id.* ¶ 67; Defs. Ex. 3). On October 17, 2001

the Board of Assessors denied the application for the abatement as being untimely. (Compl. ¶ 68; Defs. Ex. 5). It does not appear that this decision was appealed, although, as detailed above, there is a right to appeal to either the Superior Court or to the county commissioner of the county in which the property is located. Mass. Gen. Laws ch. 80, §§ 7, 10.

In July 2002, the Tomasellis proffered a check for $15,492.04 to the Town Manager, which they contended constituted the taxes due to date and sewer use charges based on actual water usage. (Compl. ¶ 71). The Town rejected this amount, but agreed to accept $37,759.00. (*Id.* ¶ 72). Apparently this was not accepted by the plaintiffs as the dispute continued. The plaintiffs raised their objection to the fact that the betterment assessment had not been recorded prior to their purchase of their property at a Select-men's meeting on August 12, 2002. (*Id.* ¶ 73). At that time, they were informed that the Town had adopted the deferred recording procedure authorized by Mass. Gen. Laws ch. 80, § 12. (*Id.*). This, however, was not true according to the plaintiffs. (*Id.*).

The plaintiffs contend that "[i]t was not until 2005 that Plaintiffs discovered through other concerned long term citizens of the Town, United States Environmental Protection Agency and other federal and state agencies the true scope and costs of the initial project and the fact that all costs had been paid for by federal and state grants." (*Id.* ¶ 75). Thus, according to the plaintiffs, this was the time they started to have information to the effect that the sewer project had been fully paid for by state and federal grants, and that the Town had been attempting to collect an illegal tax under the guise of an assessment. (*See* Pls. Opp. at 4). In 2006, they allegedly confirmed the total cost of the construction project, and that "Salisbury

did not pay any 'local share' due to grants from the federal and state government." (*Id.*).

On or about February 22, 2005, the plaintiffs filed an "Application for Adjustment of Sewer User Fees" with the Director of Public Works, seeking a "correction and abatement [of the] sewer user lien and charges" on the grounds that they were incorrectly and excessively calculated. (Defs. Ex. 6; Compl. ¶ 77). This request was denied by the Director of Public Works in a letter dated February 28, 2005, wherein he asserted that the calculation was correct. (Defs. Ex. 7). On or about April 22, 2005, the plaintiffs filed an "Application for Abatement of Betterment Tax" alleging again that the betterment had not been properly recorded and asserting that the charges had been paid for by the federal and state government, and therefore the charges were not an assessment/betterment but rather an illegal tax. (Compl. ¶ 76; Defs. Ex. 8). On or about May 9, 2005 the Sewer Commissioners denied the April 22, 2005 application on the grounds that it was untimely. (Compl. ¶ 78; Defs. Ex. 9).

On or about May 31, 2005, the plaintiffs appealed to the ATB by filing a "Petition Under Formal Procedure." (Defs. Ex. 10). Therein the plaintiffs challenged both the sewer user fees as being improperly calculated, and the sewer betterment assessment on the grounds that the project had been paid for with state and federal funds. (*Id.*; Compl. ¶ 79). A hearing was held on February 1, 2006. (Compl. ¶¶ 80, 82). The plaintiffs contend that the information testified to by the Town representatives concerning, *inter alia*, the cost of the sewer project, was clearly erroneous. (*Id.* ¶ 82). For example, the Town presented testimony that the project costs were Eighty Million ($80,000,000.00) Dollars while the Tomasellis calculated the actual

costs to be approximately Eighteen Million ($18,000,000.00) Dollars. (*Id.*).

The ATB issued its decision in favor of the Town on July 17, 2007. (*Id.* ¶ 82; Defs. Ex. 11). Therein,

> the Board found and ruled that it had no jurisdiction over this appeal because: 1) the Board has no jurisdiction over appeals of betterment assessments; 2) any purported appeal of the betterment assessment was filed well beyond the statute of limitations; 3) although the Board has jurisdiction over appeals of sewer-use charges, there is no evidence that the appellants filed a timely appeal of the sewer-use charge with the town. Moreover, even if the Appellant's April 22, 2005 abatement application could be considered a timely appeal of the sewer-use charge, the assessors produced substantial, credible evidence, including the testimony of the Town's Director of Public Works, to support a finding that the appellants' sewer-use charge was correct.

(Defs. Ex. 11 at 3–4).

On October 22, 2007, the Tomasellis appealed the ATB decision to the Massachusetts Appeals Court. (Defs. Ex. 12). The Appeals Court affirmed the ATB's decision in an opinion dated April 9, 2009. *Tomaselli v. Bd. of Assessors of Salisbury*, 74 Mass.App.Ct. 1104, 903 N.E.2d 1144, 2009 WL 937210 (Apr. 9, 2009) (Table). The Appeals Court agreed that the ATB lacked jurisdiction over the betterment assessment claim as "[t]he appellate route from the refusal to abate a betterment assessment is to the Superior Court pursuant to G.L. c. 80, § 7, or, pursuant to § 10, to the county commissioners." *Id.* The Appeals Court ruled that the Tomasellis' characterization of the betterment assessments as an "illegal tax" did not alter this conclusion. *Id.* The Court also reviewed the evidence relating to the sewer user charge

and found that there was "substantial evidence" to support the charge. *Id.* The Supreme Judicial Court denied the plaintiffs' application for further appellate review on September 30, 2009. *Tomaselli v. Bd. of Assessors of Salisbury*, 455 Mass. 1102, 914 N.E.2d 331 (Sept. 30, 2009) (Table).

The Tomasellis contend that the defendants have illegally hidden public records from them, that their requests for information have been routinely denied or barred by the defendants' requirement of excessive fees, and that the defendants have kept "at least two sets of books in relation to the sewer project[.]" (Compl. ¶¶ 84–85). Plaintiffs were allegedly forcibly removed from a public meeting on April 14, 2008 when they attempted to address the continued and ongoing miscalculation of fees. (*Id.* ¶ 59). On or about April 18, 2008, the Tomasellis filed an action in Essex Superior Court against the Town of Salisbury and the Selectmen and Board of Sewer Commissioners challenging the betterment assessment and method of assessing sewer use charges. *Tomaselli v. Beaulieu et al.*, ES CV2008–00822. The defendants removed the action to the federal court on August 27, 2008. *Tomaselli v. Beaulieu*, 08–cv–11474–PBS. Meanwhile, on April 22, 2008, the Tomasellis commenced the instant action in federal court. On February 4, 2009, the parties agreed to dismiss the earlier action and to proceed in the instant action. (*See* Docket 08–cv–11474–PBS).

Additional facts will be provided below where appropriate.

## III. DISCUSSION

### A. Motion To Dismiss Standard

Motions to dismiss under Fed.R.Civ.P. 12(b)(6) test the sufficiency of the pleadings. Thus, when confronted with a mo-

tion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the non-moving party. *Cooperman*, 171 F.3d at 46. Dismissal is only appropriate if the pleadings, so viewed, fail to support a "plausible entitlement to relief." *Rodriguez–Ortiz v. Margo Caribe*, 490 F.3d 92, 95 (1st Cir.2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S.Ct. 1955, 1967, 167 L.Ed.2d 929 (2007)).

Two underlying principles must guide the court's assessment as to the adequacy of the pleadings to support a claim for relief. *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir.2009). " 'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' Such conclusory statements are 'not entitled to the assumption of truth.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009)) (internal citations omitted). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (quoting *Ashcroft*, 556 U.S. at 679, 129 S.Ct. at 1950) (internal citations omitted). "This second principle recognizes that the court's assessment of the pleadings is 'context specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.' '[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not

'show[n]'—that the pleader is entitled to relief.' " *Id.* (quoting *Ashcroft*, 556 U.S. at 679, 129 S.Ct. at 1950) (internal citations omitted, alterations in original).

**B. *The Constitutional Claims***

In Counts I–V of the Second Amended Complaint, the Tomasellis allege that the Municipal Defendants violated their constitutional rights under the First Amendment to the United States Constitution (Count I), the Fifth Amendment (Count II), the Fourteenth Amendment due process clause (Count III), and the Fourteenth Amendment equal protection clause (Count IV), as well as under the Massachusetts Declaration of Rights. They have brought suit pursuant to 42 U.S.C. § 1983 (Count V) to enforce those rights. For the reasons detailed herein, this court finds that these claims are time-barred and should be dismissed.

### 1. *Timeliness of Claims*

The defendants contend that the constitutional claims are time-barred.[7] While the plaintiffs have raised various theories in support of their contention that the claims are timely, these arguments are not persuasive. As detailed herein, this court concludes that the constitutional claims are time-barred.

#### *Applicable Statute of Limitations*

Since 42 U.S.C. § 1983 does not have its own statute of limitations, it "borrows the appropriate state law governing limitations unless contrary to federal law[.]" *Poy v. Boutselis*, 352 F.3d 479, 483 (1st Cir.2003). The defendants argue that

---

**7.** The plaintiffs do not contend that the accrual date differs for any of their constitutional claims. (*See* Pls. Opp. at 5–7). Nevertheless, it seems that Count I, which purports to state a claim for a violation of their First Amendment rights, may be based on later events, such as the Town meeting in 2008 when, the plaintiffs contend, they were wrongfully pre-

cluded from speaking. (*See* Compl. ¶ 59). However, since the plaintiffs have not argued a different statute of limitations and Count I fails to state a claim for other reasons, *see* discussion, *infra*, this court will not distinguish between Counts I–V for purposes of the statute of limitations analysis.

the short statutes of limitations found in the statutory schemes described above should govern the plaintiffs' constitutional challenges to the betterment assessment and sewer usage fees. (Defs. Mem. at 11 (citing *Hussey v. Sullivan,* 498 F.Supp. 594, 597 (D.Mass.1980) (Massachusetts statute allowing aggrieved civil servants six months to sue for reinstatement found analogous, and therefore applicable, to § 1983 claim of police officer claiming that he had been improperly bypassed on civil service eligibility list for promotion))). However, in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), *superseded on other grounds by Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004), the Supreme Court "abandon[ed] the rule that courts must identify and apply the statute of limitations of the state claim most closely analogous to the particular § 1983 claim." *Id.* at 280, 105 S.Ct. at 1949 (O'Connor, J. dissenting). Rather, each state is to apply the limitations period applicable to tort actions for the recovery of damages for personal injuries. *Id.* at 276, 105 S.Ct. at 1947. Therefore, in Massachusetts, claims brought under § 1983 are subject to a three year statute of limitations. *Nieves v. McSweeney,* 241 F.3d 46, 51 (1st Cir.2001) (citing Mass. Gen. Laws ch. 260, § 2A). Claims under the Massachusetts Declaration of Rights are also governed by a three-year statute of limitations. Mass. Gen. Laws ch. 260, § 5B.

### Accrual of the Statute of Limitations

■ The next issue which must be addressed is when the statute of limitations accrues. "Federal law determines the date on which the statute of limitations begins running[,]" and "[t]he first step in such an inquiry is to determine the actual injury on which the plaintiff rests the cause of action." *Marrero–Gutierrez v.*

*Molina,* 491 F.3d 1, 5 (1st Cir.2007), and cases cited. "As a general principle, section 1983 claims accrue when the plaintiff knows, or has reason to know, of the injury on which the action is based. A claimant is deemed to 'know' or 'learn' of a discriminatory act at the time of the act itself and not at the point that the harmful consequences are felt." *Id.* at 5–6 (internal quotations and citations omitted). It is undisputed that the injury at issue in the instant case occurred by no later than 1994, when the Town sought payment of the challenged betterment assessment and sewer usage fees, and that the plaintiffs knew of and objected to these fees at that time. As the plaintiffs argue, "[s]ince 1994, the plaintiffs have been contesting two (2) aspects of the fees imposed on them. One aspect concerns the sewer betterment fee: what is the basis for the assessment? The other aspect concerns the sewer use fee: how is it calculated and does it comply with the law? ... It is the answers to these two (2) simple questions which form the foundation of their lawsuit." (Pls. Opp. at 2). This action, commenced in 2008, is thus untimely.

### Knowledge of Injury

■ The plaintiffs argue that "the so-called discovery rule" should be applied to determine when their cause of action accrued, and that the Complaint "clearly alleges that the information concerning the true cost of the sewer construction project, which is the basis of the sewer betterment fee, was not discovered until 2006." (*Id.* at 6). As an initial matter, this court notes that the plaintiffs' challenge to the sewer usage fees has remained constant since at least 1995, when they admit they learned that the fee had not been calculated based on actual usage, but rather using an "arbitrary" rate. (*See* Compl. ¶ 59). Thus, any claims relating to the calculation of sewer

usage fees are clearly time-barred, and they will not be discussed further. The plaintiffs' claims regarding the betterment assessment are equally unavailing.

■ Since the plaintiffs knew of their injury concerning the betterment assessment in 1994, claims relating to that assessment also accrued in 1994, even under the discovery rule. Moreover, even assuming that the discovery rule allows the statute of limitations to begin when the plaintiffs had reason to know that the sewer system work had allegedly been paid in full, such information was available to the plaintiffs many years ago. For all the reasons detailed below, the claims are time-barred.

■ The plaintiffs have been objecting to the betterment assessment since 1994. In 1997, they filed suit in Essex Superior Court challenging the betterment assessment as having been improperly assessed against them, albeit on the grounds that it should not apply to them as it had not been recorded. They renewed their objection to the betterment assessment by filing for an abatement in 2001. The knowledge of an injury necessary to begin the statute of limitations running in a § 1983 claim "is not notice of every fact which must eventually be proved in support of a claim, but rather knowledge that an injury has occurred." *Tedeschi v. Reardon*, 5 F.Supp.2d 40, 44 (D.Mass.1998) (internal punctuation and citation omitted). Therefore, applying analogous "clear precedent," the statute of limitations should be deemed to begin to run in the instant case from when the Tomasellis believed that the betterment assessment was being improperly assessed, even if they did not fully know all the reasons the assessment was improper. *See, e.g., Marrero–Gutierrez v. Molina*, 491 F.3d at 5–6 ("[a] claimant is deemed to 'know' or 'learn' of a discriminatory act at the time of the act itself"—thus statute began to run when claimant learned he had been demoted, not when he later learned the discriminatory motives behind the discrete act); *Vistamar, Inc. v. Fagundo–Fagundo*, 430 F.3d 66, 70 (1st Cir.2005) ("[w]e have long held that in a § 1983 case concerning the unlawful taking of property, the statute of limitations begins to run on the date of the wrongful appropriation[,]" not when the claimant learned of the defendants' wrongful intentions) (internal punctuation and citation omitted); *Carreras–Rosa v. Alves–Cruz*, 127 F.3d 172, 173–74 (1st Cir.1997) (plaintiffs' brother was shot and killed by police: § 1983 statute of limitations commenced on date of his death, not when they received the autopsy report).

■ Application of the "discovery rule" to the Tomasellis' claims does not alter this result. "The so-called 'discovery rule' provides that the limitation period is tolled until events occur or facts surface which would cause a reasonably prudent person to become aware that he or she has been harmed." *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 187 (1st Cir.2006) (internal quotations and citation omitted). "A plaintiff is considered to be on 'inquiry notice' when the first event occurs that would prompt a reasonable person to inquire into a possible injury at the hands of the defendant." *Id.* "Critically, knowledge of every fact necessary to prevail on the claim is not required to put the plaintiff on inquiry notice and trigger the accrual period." *Id.* at 188 (internal quotation and citation omitted). Here, the Tomasellis believed that the betterment assessment was improper as early as 1994. Therefore, by that date they were on inquiry notice and their suit, filed more than 10 years later, is untimely.

■ Moreover, even assuming that the Tomasellis' claim that the sewer system

had been paid in full created a new injury distinct from their earlier challenge to the betterment assessment, their claim is still time-barred. There is no explanation in the record why the plaintiffs could not have gathered the information on which they base their claim considerably earlier. For example, they include in the record a letter from the EPA in 2006 describing "EPA's involvement with the Town of Salisbury as it pertains to the construction of the wastewater treatment plant and collection system upgrade during the 1980s." (Pls. Ex. 1).[8] Therein, the EPA notes "it is difficult to review documents and recollect activities that took place nearly 20 years ago especially since some of the pertinent files of the construction grants program may no longer be available." (*Id.*). There is no indication in the Complaint why the plaintiffs could not have obtained this information from the EPA and/or other involved state agencies in or around 1994 when their battle over the betterment assessment began.

Moreover, the Tomasellis filed for an abatement of the betterment assessment on April 22, 2005 on the grounds that the sewer project had been paid for by state and federal grants, and that the assessment was therefore illegal. (Defs. Ex. 8). They obviously had the information they needed to support that claim before then. Nevertheless, they waited until April 18, 2008 to file suit in Essex Superior Court, and until April 22, 2008 to file the instant action. Since the Tomasellis knew they were harmed in 1994, and had access to the relevant information well more than three years before they commenced the instant suit, their claims are time-barred.

### Fraudulent Concealment

 The plaintiffs also contend that the statute of limitations should be tolled in the instant case under the doctrine of fraudulent concealment because the Town failed and refused to give them financial information relating to the sewer construction project despite repeated requests. (Pls. Opp. at 6–7). "Equitable tolling is available 'in exceptional circumstances' to extend the statute of limitations." *Vistamar*, 430 F.3d at 71 (quoting *Neverson v. Farquharson*, 366 F.3d 32, 40 (1st Cir. 2004)). This is not such a situation.

"[F]raudulent concealment requires some affirmative act on the part of the defendant to conceal or coverup the wrongful conduct which underlies the action." *Mowbray v. Waste Mgmt. Holdings, Inc.*, 90 F.Supp.2d 135, 140 (D.Mass. 2000), and cases cited. *See also* Mass. Gen. Laws ch. 260, § 12 (providing for tolling of statute of limitations "[i]f a person liable to a personal action fraudulently conceals the cause of action from the knowledge of the person entitled to bring it"). Fed.R.Civ.P. 9(b) requires that the facts giving rise to a fraudulent concealment claim be pleaded with particularity. *Epstein*, 460 F.3d at 189, and cases cited. The plaintiffs have failed to meet this burden.

In the instant case, as detailed above, the record establishes that the Tomasellis are basing their claim that the sewer had been paid for through grants on information derived from the EPA and other agencies. Consequently, they cannot establish that the actions of the Municipal Defendants interfered with their ability to pursue their claims. Moreover, the record establishes that the plaintiffs gathered sufficient information prior to April 22, 2005 to bring a claim for an abatement on the

---

**8.** Plaintiffs cite to this letter as confirmation "that the total cost of construction project was only slightly over 18 million dollars and Salisbury did not pay any 'local share' due to grants from the federal and state government." (Pls. Opp. at 4).

same grounds as alleged in the instant Complaint, despite the lack of cooperation of the Municipal Defendants. Therefore, the claim for fraudulent concealment must fail for the fundamental reason that the plaintiffs have failed to establish that the conduct of the defendants precluded them from gaining the necessary information.

■ In addition, generalized allegations that the plaintiffs were discouraged or hindered from gathering information is insufficient to state a claim of fraudulent concealment. *See Vistamar*, 430 F.3d at 72 (plaintiff fails to "allege any specific facts of concealment that would have impeded an investigation at an earlier date had [the plaintiff] chosen to undertake one"). The instant Complaint, which lacks any particulars as to time, place and content of any fraudulent conduct, is insufficient to state a claim of fraudulent concealment so as to toll the statute of limitations. *See Epstein*, 460 F.3d at 189–90, and cases cited.

### *Continuing Violation*

■ The plaintiffs contend further that since "the defendants are still charging the plaintiffs for the betterment fee and the sewer use fees, including interest[,]" the case raises claims of ongoing and continuous violations so that the limitations period does not expire. (Pls. Opp. at 7). "The continuing violation doctrine is an equitable exception that allows [a plaintiff] to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts[.]" *O'Rourke v. City of Providence*, 235 F.3d 713, 730 (1st Cir.2001). In addition, the continuing violation doctrine "requires some anchoring violation within the limitations period[.]" *Cordero–Suárez v.*

*Rodríguez*, 689 F.3d 77, 83 (1st Cir.2012). The continuing violation doctrine has no application in the instant case.

■ Here, the wrongful conduct was the imposition of the betterment assessment prior to 1994. The fact that the plaintiffs elected to make payments over time, or that the defendants continue to demand such payment, does not alter the fact that the wrongful conduct was a one-time event, and that it is simply the harm that has been continuous. As the court recognized in *Taygeta Corp. v. Varian Assocs., Inc.*, 436 Mass. 217, 763 N.E.2d 1053 (2002), relied on by the plaintiffs, to qualify as a continuing tort there must be " 'recurring tortuous or unlawful conduct,' " a continuing tort " 'is not established by the continuation of harm caused by previous but terminated tortious or unlawful conduct.' " *Id.* at 231, 763 N.E.2d at 1065 (quoting *Carpenter v. Texaco, Inc.*, 419 Mass. 581, 583, 646 N.E.2d 398, 400 (1995)). Thus, in *Taygeta*, the court recognized that a contaminant spill which caused harm for years was not a continuing violation, while the continuous seeping of contamination onto property renewed the statute of limitations over time. *Id.* at 231–32, 763 N.E.2d at 1065. In the instant case, there was only one calculation of the betterment assessment and, therefore, one wrongful act. For this reason, the plaintiffs' claims do not constitute a continuing violation and are time-barred.

### 2. *Sufficiency of the Allegations*

In addition to being untimely, the Tomasellis' constitutional claims should be dismissed for failure to state a claim upon which relief can be granted.[9]

---

**9.** Since Count V merely summarizes the constitutional claims made in Counts I–IV, which allegedly give rise to a claim under 42 U.S.C. § 1983, Count V will not be addressed separately.

### Count I: First Amendment

 In Count I, the plaintiffs contend that the "Defendants violated on numerous occasions the Plaintiffs' rights, personal rights secured by the First Amendment to the Constitution of the United States by prohibiting the Plaintiffs from freedom of speech uncontrolled by any censorship or restriction of government." (Compl. ¶ 99). As detailed herein, the plaintiffs' failure to identify the wrongful conduct of the individual defendants requires that this count be dismissed.[10]

The only factual allegations which may apply to this claim can be found in the following paragraphs of the Complaint, where the plaintiffs have alleged in relevant part as follows:

> 59. ... Defendants continued to deny any wrongdoing and publicly humiliated the Plaintiffs in numerous ways including ordering the cable to be unplugged, during Plaintiff's pleas to the Defendants and on April 14, 2008 at a Selectmen Meeting, had Plaintiffs forcibly removed, by calling the police and barring their return to the public meeting due to their attempts to address the continued and ongoing miscalculation of fees. Further, the Defendants in their official capacity then unlawfully edited portions of the April 14, 2008 recorded televised Selectmen meeting, after it's [sic] rebroadcasting served to raise public awareness, editing out the Plaintiff's presentation completely.

> 83. The Defendants continue to prevent and/or restrict Plaintiffs from speaking at Town Meetings in a clearly discriminatory manner; they continue to defame and publicly humiliate Plaintiffs and continue to misrepresent facts. The Defendants have been acting in such a manner as to intentionally scheme to cover up the truth.

> 84. At the May 2008 Town Meeting Ronald Ray, Moderator, refused to allow plaintiffs to refute, knowing false statements made by Selectmen Jerry V. Klima and Donald W. Beaulieu in an attempt to once again discredit Plaintiff's statements as to the town's wrongful actions and to try to prevent the selectmen's knowing removal of the current equitable sewer user calculation formula, which the town has never complied with, in an attempt to further cover and eliminate any challenges to their wrongful actions....

> 90. Defendants have violated Plaintiffs [sic] life and liberty rights by restraining Plaintiffs from speaking at public meetings in matters relating to public concern....

(Compl. ¶¶ 59, 83–84, 90). For the reasons detailed herein, these generalized allegations are insufficient to state a claim for a constitutional violation.

---

**10.** To the extent that the Tomasellis seek to hold the individual defendants liable in their official capacities, that is the equivalent of pleading a claim against the Town. *See Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). The Supreme Court has long held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). "Instead, it is when execution of a government's policy or custom ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037–38. Therefore, a plaintiff seeking to impose liability on a municipality under Section 1983 must "demonstrate both the existence of a policy or custom and a causal link between that policy and the constitutional harm." *Santiago v. Fenton*, 891 F.2d 373, 381 (1st Cir.1989). Here, the plaintiffs have not alleged the existence of a custom or policy.

■■■■ The parties agree that the appropriate standard is found in *Gorelik v. Costin,* 605 F.3d 118 (1st Cir.2010), where the Court held that "[i]n order to succeed on a First Amendment retaliation claim, a party must show that [the] conduct was constitutionally protected, and that this conduct was a substantial factor or ... a motivating factor driving the allegedly retaliatory decision." *Id.* at 123 (internal quotation and citation omitted). "Claims of retaliation for the exercise of First Amendment rights are cognizable under [42 U.S.C.] § 1983." *Powell v. Alexander,* 391 F.3d 1, 16 (1st Cir.2004). However, "[i]t is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions." *Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir.1999). Thus, "the case law requires a separate assessment of the potential liability of each of the defendants." *Grajales v. P.R. Ports Auth.,* 682 F.3d 40, 47 (1st Cir.2012). Each defendant's role in the challenged conduct "must be sufficiently alleged to make him or her a plausible defendant." *Ocasio–Hernandez v. Fortuno–Burset,* 640 F.3d 1, 16 (1st Cir.2011). "[G]eneric accusations" regarding "the collective conduct" of the defendants are insufficient to state a claim. *Feliciano v. Rivera–Sanchez,* No. 11–1672(JAG), 2012 WL 4471644, at *7–*8 (D.P.R. Sept. 26, 2012). In the instant case, the failure of the plaintiffs to more specifically identify the defendants involved, the statements at issue, or the context in which the statements were made, renders the pleading insufficient to state a claim.

As an initial matter, the plaintiffs do not contend that they have a First Amendment right to have statements they made at Town meetings broadcast on cable television. Thus, the fact that the views they expressed at the Town meeting were not aired does not, on the facts alleged, state a claim for a violation of their constitutional rights.

Moreover, plaintiffs' generalized charges that the "defendants" prohibited them from speaking is insufficient to state a claim. Where, as here, "the Court is left guessing as to each Defendant's participation" in the challenged action, the complaint is insufficient to state a claim under § 1983. *Feliciano,* 2012 WL 4471644, at *7.

■■■■ The only defendant identified in the relevant paragraphs as interfering with the Tomasellis' free speech is Ronald Ray, the Town Moderator, who purportedly did not allow the plaintiffs "to refute" allegedly false statements. As an initial matter, the plaintiffs "have not identified the protected speech that allegedly motivated retaliation by the [defendant,]" and thereby fail to state a viable First Amendment claim. *Priolo v. Town of Kingston,* 839 F.Supp.2d 454, 463 (D.Mass.2012). Moreover, the scope of any limitation imposed on the plaintiffs' speech and the circumstances of Ray's conduct are unknown. A moderator elected by the town's voters is responsible for presiding over and regulating town meetings and deciding all questions of order. *See Curnin v. Town of Egremont,* 510 F.3d 24, 26 (1st Cir.2007) (citing Mass. Gen. Laws ch. 39, §§ 14, 15). Thus, the fact that as Town Moderator, Ray, in some manner, limited the plaintiffs' presentation does not, standing alone, state a violation of plaintiffs' constitutional rights. Rather, additional details are needed.

Similarly, accepting as true plaintiffs' assertion that they were forcibly removed from the April 14, 2008 meeting (at the direction of persons unknown) also does not, without more, state a violation of their constitutional rights. As provided in Mass. Gen. Laws ch. 30A, § 20(f):

No person shall address a meeting of a public body without permission of the chair, and all persons shall, at the request of the chair, be silent. No person shall disrupt the proceedings of a meeting of a public body. If, after clear warning from the chair, a person continues to disrupt the proceedings, the chair may order the person to withdraw from the meeting and if the person does not withdraw, the chair may authorize a constable or other officer to remove the person from the meeting.

Therefore, the context in which the removal took place is critical in assessing whether the plaintiffs have stated a claim relating to their removal from the meeting. The Complaint, which fails to provide any details, fails to state a claim.

For all these reasons, this court recommends that Count I be dismissed.

### Count II: Fifth Amendment

Plaintiffs allege in Count II of their Complaint that the "Defendants violated the Plaintiffs rights of life, liberty or property, without the due process of law. The Defendants have unconstitutionally taken the investment backed property of Plaintiffs without just compensation." (Compl. ¶ 101). This claim is captioned as stating a claim for a violation of the plaintiffs' Fifth Amendment rights. The plaintiffs do not address the sufficiency of this claim in their opposition to the motion to dismiss. (See Pls. Opp. at 10–12). For the reasons detailed herein, this court recommends that Count II be dismissed.

▬▬▬ "The Fifth Amendment, extended to the states ... by the Fourteenth, permits government takings of private property only for public use and with just compensation to the individual deprived of the property." Elena v. Municipality of San Juan, 677 F.3d 1, 7 (1st Cir.2012). "A plaintiff may claim a takings

violation via § 1983, but for the claim to be ripe, a plaintiff must first exhaust any available state remedies." Id. As the First Circuit has explained, "[t]his makes intuitive sense: if a plaintiff has not even tried to obtain compensation from the state, then we cannot say that the state has denied the plaintiff just compensation." Id.

The defendants argue that the plaintiffs' Fifth Amendment argument must fail because the plaintiffs have not alleged that they have been deprived of all economically beneficial uses of their land, which the defendants contend is a prerequisite to the plaintiffs receiving any compensation based on the application of government regulations. (See Defs. Mem. at 26–27 (citing Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg. Planning Agency, 535 U.S. 302, 330, 122 S.Ct. 1465, 1483, 152 L.Ed.2d 517 (2002); Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1015–16, 112 S.Ct. 2886, 2893–94, 120 L.Ed.2d 798 (1992))). This court does not need to address the applicability or scope of this principle since the Tomasellis have not pursued any "taking" action in state court.

▬▬▬ "In Massachusetts, M.G.L. c. 79 is the exclusive remedy for challenging the exercise of eminent domain." Kelly v. Day, 585 F.Supp.2d 211, 215 (D.Mass. 2008). The plaintiffs' failure to bring such a suit precludes their present claim of an unconstitutional taking of their property. See id. at 215. In addition, as described above, the Tomasellis failed to exhaust their remedies to challenge the betterment assessment. The plaintiffs' failure to exhaust their administrative remedies renders judicial review "inappropriate at this time." Id. at 216. See also Harbours Pointe of Nashotah, LLC v. Village of Nashotah, 278 F.3d 701, 704 (7th Cir.2002) ("If a state provides adequate procedures for seeking just compensation, a property

owner cannot state a claim under federal law until he has used those procedures and been denied compensation.").

### Count III: Fourteenth Amendment— Due Process

As alleged in Count III of the Complaint, "Defendants violated the Plaintiffs right of life, liberty or property, without the due process of law." (Compl. ¶ 103). Plaintiffs argue that this states a claim of both a procedural as well as a substantive due process violation. (Pls. Opp. at 10). Both claims must fail.

▆▆▆▆▆ "In order to establish a procedural due process claim under section 1983, a plaintiff must allege first that it has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived it of that property interest without constitutionally adequate process." *Marrero–Gutierrez*, 491 F.3d at 8 (internal quotations and citation omitted). As detailed above, however, Massachusetts has an extensive statutory scheme to challenge betterment assessments and sewer usage fees.[11] The existence of such schemes precludes the plaintiffs' procedural due process claim under § 1983. *See Lowe v. Scott*, 959 F.2d 323, 340 (1st Cir.1992), and cases cited.

▆▆▆▆ The plaintiffs' claim of a substantive due process violation is equally unavailing. "State conduct violates an individual's substantive-due-process rights when it is 'so brutal, demeaning, and harmful that it is shocking to the conscience.'" *Elena*, 677 F.3d at 7–8 (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 30 (1st Cir.2008)). Moreover, "where a substantive-due-process claim is founded on the same deprivation as a takings claim, as here, the due process claim is subject to the same exhaustion requirement as the takings claim." *Id.* at 8.[12]

In the instant case, the plaintiffs contend that the way in which the Town has set the rate for sewer usage fees is in violation of law. Similarly, they claim that the betterment assessment is not warranted based on the actual costs of the system. Even assuming, *arguendo*, that the plaintiffs are correct, the actions undertaken by the defendants in setting the challenged rates were done openly, and pursuant to Town votes. There is no allegation that the defendants acted for personal gain or that they proceeded with "any fundamental procedural irregularity, racial animus, or the like." *Clark v. Boscher*, 514 F.3d 107, 113 (1st Cir.2008) (internal quotations omitted). The conduct complained of does

---

**11.** To the extent that the plaintiffs are alleging that the betterment assessment constitutes an "illegal tax," they were still obligated to exhaust the administrative scheme before resorting to the courts or, in limited circumstances, to follow the procedures established by Mass. Gen. Laws ch. 60, § 98 before bringing suit. For example, to void a tax bill the taxpayer must pay the bill first and then bring suit within 90 days. *See N.E. Legal Found. v. City of Boston*, 423 Mass. 602, 607, 670 N.E.2d 152, 156 (1996).

**12.** The plaintiffs also assert that a substantive due process claim can be based on government conduct "relative to its care or treatment of her [that] was malicious or reflected the official's 'deliberate indifference' to her[.]" (Pls. Opp. at 10). While the plaintiffs have not explained how to apply a "deliberate indifference" standard in the context of a challenge to sewer usage fees or a betterment assessment, that question does not need to be answered. Even where that standard is applicable, the conduct at issue must "shock the conscience" in order to rise to the level of a substantive due process violation. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851, 118 S.Ct. 1708, 1719, 140 L.Ed.2d 1043 (1998). Here, the plaintiffs have not alleged sufficient facts to show that any such conduct occurred.

not rise to the level of a violation of substantive due process rights.[13]

### Count IV: Equal Protection

In Count IV, the plaintiffs alleged that "[t]he Defendants have violated Federal Law which prohibits discrimination[,]" and that "[t]he Defendants have treated Plaintiffs differently from similarly situated other individuals and businesses" without a legitimate purpose. (Compl. ¶¶ 105–107). They have not proffered any facts to support this claim and it should be dismissed.

 "Under the Equal Protection Clause, persons similarly situated must be accorded similar governmental treatment. In order to establish this claim, [a plaintiff] needs to allege facts indicating that, compared with others similarly situated, she was selectively treated based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Marrero–Gutierrez*, 491 F.3d at 9 (internal punctuation, quotations and citations omitted). In the instant case, the plaintiffs contend that they were treated in the same manner as other Town residents in that the Town improperly calculated the betterment assessment rates and sewer usage fees. Since the plaintiffs have "fail[ed] to make any allegation that persons similarly situated were treated more favorably[,]" their equal protection claim must fail. *Id.*

 Plaintiffs also contend that their equal protection claim states a claim based on "a class of one[,]" "where the plaintiff does not allege membership in a specific class but contends that he 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" (Pls. Opp. at 11 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074, 145 L.Ed.2d 1060 (2000))). Regardless of the size of the class, plaintiffs have not alleged that they were treated differently than anyone else vis-à-vis the establishment of the sewer charges which form the basis of this litigation.[14] Therefore, the equal protection claim must fail.

### Massachusetts Declaration of Rights

In the captions for Counts I–IV, the plaintiffs also contend that in addition to violating the United States Constitution, the defendants also violated the Massachusetts Declaration of Rights. No further information is provided either in the factual allegations of the Complaint or in the plaintiffs' opposition to the motion to dismiss. It is an open question whether a cause of action can be brought directly under the Massachusetts Declaration of Rights or whether it must be brought pursuant to the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H & 11I (the "state analogue" to § 1983). *See Layne v. Super., MCI–Cedar Junction*, 406 Mass. 156, 159–60, 546 N.E.2d 166, 168–69 (1989). In any event, the claims must be dismissed for failure to state a claim.

 To the extent that the plaintiffs are seeking to bring direct claims under the Massachusetts Declaration of

---

**13.** To the extent that the plaintiffs contend that the defendants engaged in criminal activity by improperly charging the fees and assessment, the proper authority to investigate such conduct would be the state or federal prosecutors who have the authority to bring criminal charges.

**14.** While plaintiffs have alleged in passing that they were ordered to close their business for non-payment of taxes while others were allowed to remain open, this allegation is void of any factual support and does not satisfy the *Iqbal* pleading requirements. Moreover, in their memorandum, the plaintiffs do not cite this as a basis for their equal protection claim.

Rights, they have not alleged that the state Constitution provides them any greater protection than the federal Constitution. Therefore, the state constitutional claims must be dismissed for the same reasons as the federal constitutional claims discussed above. "To establish a claim under the MCRA,[15] a plaintiff must prove 1) his exercise or enjoyment of his rights secured by the Constitution or the laws of either the United States or the Commonwealth have been subjected to interference or attempted interference by the defendants and 2) that the interference or attempted interference was by 'threats, intimidation or coercion.'" *Carroll v. City of Quincy*, 441 F.Supp.2d 215, 226 (D.Mass.2006) (quoting *Bally v. Northeastern Univ.*, 403 Mass. 713, 717, 532 N.E.2d 49, 51–52 (1989)). These requirements "are 'coextensive with 42 U.S.C. § 1983, except that the Federal statute requires State action whereas its State counterpart does not.'" *Id.* (quoting *Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 822–23, 473 N.E.2d 1128, 1131 (1985)). For the reasons detailed above, the plaintiffs have failed to state a claim for a violation of their constitutional rights. Moreover, there are no allegations which indicate that the Municipal Defendants used "threats, intimidation or coercion."

The Massachusetts Supreme Judicial Court has defined the words "threats, intimidation or coercion" as follows:

"Threat" . . . involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. "Intimidation" involves putting in fear for the purpose of compelling or deterring conduct. ["Coercion" is] "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done."

*Ali v. Univ. of Mass. Med. Ctr.*, 140 F.Supp.2d 107, 110 (D.Mass.2001) (quoting *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 474, 631 N.E.2d 985, 990 (1994)) (alteration in original); *see also, Mancuso v. Mass. Interscholastic Athletic Ass'n, Inc.*, 453 Mass. 116, 131, 900 N.E.2d 518, 531 (2009). Therefore, violations of the MCRA typically involve "'actual or potential physical confrontation accompanied by a threat of harm[.]'" *Planned Parenthood League of Mass., Inc.*, 417 Mass. at 473, 631 N.E.2d at 989. The Tomasellis' objections to the enforcement of the sewer usage fees and betterment assessment do not include such claims. For these reasons, the claims against the Municipal Defendants under the MCRA should be dismissed.[16]

## C. *The RICO Claims Should Be Dismissed*

In their Complaint, the plaintiffs allege that the defendants engaged in a conspira-

---

**15.** The MCRA, Mass. Gen. Laws ch. 12, § 11H, provides in relevant part: "Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured." Mass. Gen. Laws ch. 12, § 11I authorizes civil actions by any person who has suffered the interference or attempted interference of the rights described in § 11H.

**16.** In light of this court's conclusion that the constitutional claims are time-barred and otherwise fail to state a claim, this court will not address the defendants' assertion that the claims are barred under *res judicata* or related doctrines. Nor will the court address the defendants' claims of qualified immunity.

cy to violate 18 U.S.C. § 1962(c) (Count VIII) and § 1962(d) (Count IX), the RICO statutes. The conclusory nature of the allegations requires that these counts be dismissed for failure to state a claim.

■■■■■ "To state a claim under section 1962(c), a plaintiff must allege each of the four elements required by the statute: (1) conduct (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *N. Bridge Assocs., Inc. v. Boldt*, 274 F.3d 38, 42 (1st Cir.2001). "Section 1962(d) serves to make unlawful conspiracies to violate section 1962(c). In that regard, each defendant in a RICO conspiracy must have joined knowingly in the scheme and been involved himself, directly or indirectly, in the commission of at least two predicate offenses." *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 41 (1st Cir.1991). Thus, to establish a conspiracy claim, the plaintiff must allege "(1) the existence of an 'enterprise,' (2) that the defendant knowingly joined the enterprise and (3) that the defendant agreed to commit, or in fact committed, two or more specified predicate crimes as part of his participation in the affairs of the enterprise." *United States v. Angiulo*, 847 F.2d 956, 964 (1st Cir.1988), *abrogated on other grounds* by *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). While pleadings are to be construed liberally, with all reasonable inferences to be drawn in favor of the plaintiff, "a greater level of specificity is required in RICO cases[.]" *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 443 (1st Cir.2000) (citations omitted). Moreover, "[i]t is settled law in this circuit that Fed.R.Civ.P. 9(b), which requires a party to plead fraud with particularity, extends to pleading predicate acts of mail and wire fraud under RICO. As in any other fraud case, the pleader is required to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud." *Feinstein*, 942 F.2d at 42 (internal quotations and citations omitted). Applying these principles mandates that the RICO claims be dismissed.

■■■■ The Complaint fails to satisfy any element of the RICO statute. For example, although the plaintiffs have referred to an "enterprise" they have failed to define what the enterprise is in the instant case. (*See* Compl. ¶¶ 126–128). Specifically, the plaintiffs have alleged that the defendants "are a loose knit group of people and or legal entities qualified as an 'association-in-fact' enterprise under the statute. 18 U.S.C. § 1961(4)[.]" (Compl. ¶ 127). However, "[i]t is well settled law that the definition of an enterprise as contained in 18 U.S.C. § 1961(4), establishes only two basic categories of associations: legal entities and associations in fact. There are various requirements that [the plaintiffs] must show in order to prove the existence of an association-in-fact enterprise." *Ponce Fed. Bank, F.S.B. v. Colon Munoz*, No. 92–1331(DRD), 1996 WL 590274, at *16 (D.P.R. Sept. 26, 1996) (internal citations omitted). "An enterprise is 'proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *In re Lupron Mktg. & Sales Practices Litig.*, 295 F.Supp.2d 148, 164 (D.Mass.2003) (quoting *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981)). Moreover, "[a]s a matter of law, it is not sufficient that several organized, ongoing groups come together for one concerted action, *unless* those groups can also be shown to constitute a larger unit, over and above their separate structures and operations[.]" *Libertad v. Welch*, 53 F.3d 428, 442 (1st Cir.1995). In the instant case, the Tomasellis have not alleged the existence of a group or "that some sort of structure,

hierarchical or otherwise, existed within the group for the making of decisions." *Ponce Fed. Bank, F.S.B.*, 1996 WL 590274 at *16. They have not pled sufficient facts to establish the existence of an enterprise.

■ Similarly, the plaintiffs have not pled sufficient facts to establish a "pattern of racketeering." The RICO statute requires a plaintiff to show two or more "acts of racketeering activity;" that is, acts that violate certain specified federal statutes such as the mail and wire fraud statutes, murder, kidnapping, gambling, bribery and extortion. *See* 18 U.S.C. § 1961(1), (5). Moreover, these acts, taken together, must demonstrate a "pattern of racketeering activity." 18 U.S.C. § 1961(5). *See Apparel Art Int'l, Inc. v. Jacobson*, 967 F.2d 720, 722 (1st Cir.1992). In the instant case, the plaintiffs have not provided any specificity as to the alleged racketeering activity in which the "enterprise" allegedly engaged. There are conclusory allegations of a "pattern of fraud, misrepresentation, and obstruction of justice" (Compl. ¶ 130), "a scheme to extort money" (*id.* ¶ 132), and "mail fraud" (*id.* ¶ 133), for example, but no details. In addition, the plaintiffs have not alleged sufficient facts to establish a "pattern." "[T]o comprise a pattern, the two or more predicate acts must be 'related,' the criteria for relatedness being vague, but, in addition, the acts must constitute or implicate a continuing threat of criminal behavior." *Sys. Mgmt., Inc. v. Loiselle*, 303 F.3d 100, 105 (1st Cir.2002) (internal citation omitted). No such pattern is alleged here. Absent allegations of an enterprise, racketeering activity or a pattern of racketeering, the RICO claims must fail and should be dismissed.

### D. *The Chapter 93A Claim Should Be Dismissed*

If, as this court has recommended, the plaintiffs' federal claims are dismissed, this court would further recommend that the court not exercise pendant jurisdiction over any of the remaining claims, all of which are state law claims. Even if the merits of the state law claims are addressed, however, this court would recommend that they be dismissed.

Counts VI and VII of the Second Amended Complaint purport to state claims against the Municipal Defendants under Mass. Gen. Laws ch. 93A §§ 11 and 9, respectively. These claims are time-barred and fail to state a claim.

■ Claims pursuant to Mass. Gen. Laws ch. 93A are subject to a four year statute of limitations. *See Lambert v. Fleet Nat'l Bank*, 449 Mass. 119, 126, 865 N.E.2d 1091, 1097 (2007) (citing Mass. Gen. Laws ch. 260, § 5A). "Under the 'discovery rule,' this limitations period is subject to tolling until the plaintiff knew or should have known of the alleged injury." *Id.*, and cases cited. As detailed above, the plaintiffs knew of their injury since at least 1994, and had access to all the information on which they base their claims around that time. Since suit was not commenced until 2008, it is time-barred.

■ Moreover, the Tomasellis cannot maintain an action under ch. 93A, § 9 because, among other reasons, they have failed to allege that they sent a written demand for relief at least thirty days prior to filing suit. "A demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a special element must be alleged and proved." *Entrialgo v. Twin City Dodge, Inc.*, 368 Mass. 812, 812, 333 N.E.2d 202, 204 (1975). *See also Cimon v. Gaffney*, 401 F.3d 1, 6–7 (1st Cir.2005) (suit under Mass. Gen. Laws ch. 93A, § 9 is barred if plaintiff failed to provide defendant "with the pre-suit notice

required by Mass. Gen. Laws ch. 93A, § 9(3)"). Therefore, Count VII should be dismissed.

 Count VI similarly fails to state a claim. Chapter 93A prohibits " 'unfair or deceptive acts or practices in the conduct of any trade or commerce.' " *Peabody N.E., Inc. v. Town of Marshfield,* 426 Mass. 436, 439, 689 N.E.2d 774, 778 (1998) (quoting ch. 93A, § 2(a)). Chapter 93A has no application to municipalities or town officials who are "motivated by 'legislative mandate, not business or personal reasons.' " *Id.* at 440, 689 N.E.2d at 778 (internal quotations and citations omitted). In the instant case, the Municipal Defendants are being challenged based on actions they allegedly undertook in connection with their operation of the Town. They were not engaged in trade or commerce. Therefore, Counts VI and VII should be dismissed.

### E. *The Conspiracy Count Should Be Dismissed*

In Count X, the plaintiffs assert that the defendants are liable for conspiracy to commit and the commission of conversion, defamation, intentional infliction of emotional distress and abuse of process, invasion of privacy, intentional interference with advantageous business relations, misrepresentation and negligent misrepresentation. The individual claims will be addressed *infra.* For the reasons detailed herein, the conspiracy allegations fail to state a claim upon which relief can be granted. Specifically, the allegation that "Defendants conspired, cooperated, assisted, aided and abetted in misrepresenting facts, concealing evidence to purposely harm and facilitate their goals of commission of fraud, violation of Plaintiff's constitutional rights, and conversion of their property" fails to state a claim. (Compl. ¶ 148).

 A person may be liable for conspiracy if he knows that another person's conduct " 'constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.' " *Kurker v. Hill,* 44 Mass.App. Ct. 184, 189, 689 N.E.2d 833, 837 (1998) (citing Restatement (Second) of Torts § 876(b) (1977)). "Key to this cause of action is a defendant's substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan." *Id.* Moreover, where, as here, the Complaint charges conspiracy to defraud, Fed.R.Civ.P. 9(b) requires that defendants "receive specification of the time, place, and content of the alleged conspiracy[.]" *Heinrich ex rel. Heinrich v. Sweet,* 49 F.Supp.2d 27, 45 (D.Mass.1999); *Kurker,* 44 Mass.App.Ct. at 188 n. 3, 689 N.E.2d at 836 n. 3 (claim for civil conspiracy to defraud must be pleaded with particularity). In the instant case, the plaintiffs have failed to allege any facts which would establish a common tortious plan involving the Municipal Defendants. Additional facts need to be presented for the Municipal Defendants to be apprised of the contours of the alleged conspiracy. Therefore, this court recommends that the conspiracy component of Count X be dismissed. *See Hayduk v. Lanna,* 775 F.2d 441, 444 (1st Cir.1985) (allegations to the effect that the defendants conspired and developed a scheme for the purpose of cheating the plaintiffs out of their corporate and partnership interests fail to state a claim; "[w]ithout supporting facts regarding the circumstances surrounding the formation of the conspiracy to defraud plaintiffs or plaintiffs' basis for believing that a conspiracy existed for the purpose of defrauding them, the allegation becomes a conclusional accusation of the sort that is proscribed by Rule 9(b).").

### F. *The Specific State–Law Claims*

To the extent that Count X purports to state direct claims for each of the torts alleged, the claims must still be dismissed for failure to state a claim, as described below.

### Claims Against the Town

The Tomasellis' claims against the Town itself must be dismissed, as the Town is immune from suits alleging intentional torts. Thus, pursuant to Mass. Gen. Laws ch. 258, § 10, a public employer is not liable for:

> any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations.

Mass. Gen. Laws ch. 258, § 10(c). In addition, to the extent that the Tomasellis are contending that the defendants are seeking to enforce an illegal tax, the Town is immune from "any claim arising in respect of the assessment or collection of any tax" pursuant to ch. 258, § 10(d). As the plaintiffs themselves recognize, "[t]he gist of the plaintiff's claims are in the nature of intentional torts." (Pls. Opp. at 14). Therefore, Count X fails to state a claim against the Town.[17]

The plaintiffs have not addressed the sufficiency of the pleadings with respect to the individual tort claims other than to assert "that the facts alleged address and satisfy the pleading requirements for each of the intentional torts alleged." (Pls. Opp. at 15). This conclusion is not supported by the record. For the reasons detailed below, the tort claims against all the other Municipal Defendants should be dismissed as well because the Complaint fails to state a claim.

### Conversion

■ It is well-established that "conversion is simply an intentional and wrongful exercise of dominion or control *over a chattel,* which seriously interferes with the owner's rights in the chattel." *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops,* 4 F.3d 90, 94 (1st Cir.1993) (emphasis in original). *See also John G. Danielson, Inc. v. Winchester–Conant Props., Inc.,* 186 F.Supp.2d 1, 28 (D.Mass. 2002) ("In Massachusetts, conversion focuses on the wrongful possession of personal property of the owner, without the owner's consent."). Since there are no allegations that the Municipal Defendants wrongfully obtained possession of any personal property belonging to the Tomasellis, the claim for conversion against these defendants should be dismissed.

### Defamation

■ "To prove defamation, the plaintiff must establish that the defendant was at fault for publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." *Dragonas v. Sch. Comm. of Melrose,* 64 Mass.App.Ct. 429, 437, 833 N.E.2d 679, 686–87 (2005) (internal quotation omitted). In the instant case, the Tomasellis have not alleged any facts to support their defamation claim. Concluso-

---

17. The defendants argue that any negligence claim against the Town should be dismissed since the Tomasellis failed to comply with the presentment requirement of Mass. Gen. Laws ch. 258, § 4. Since the plaintiffs contend that the presentment requirement has no application here since the case involves intentional torts, the presentment argument will not be addressed further. (Pl. Opp. at 14).

ry charges of defamation are insufficient to state a claim. *Maldonado,* 568 F.3d at 268. (*See* Compl. ¶ 83 (charging that defendants continue "to defame and publicly humiliate Plaintiffs and continue to misrepresent facts")).

■■■■■ To the extent that the plaintiffs are challenging statements made during the course of adjudicatory proceedings (*see* Compl. ¶ 82), such statements are "absolutely privileged and cannot support a claim of defamation, even if uttered with malice or in bad faith." *Correllas v. Viveiros,* 410 Mass. 314, 319, 572 N.E.2d 7, 10 (1991). The only specific statement the plaintiffs have identified as being defamatory was allegedly made in 2008, when "during a public televised Selectmen Meeting, Selectmen and Town Manager Neil Harrington accused Plaintiffs of not being residents of the town and refusing to . . . talk to plaintiffs until they had paid their over $100,000 in outstanding taxes." (Compl. ¶ 87). This statement, standing alone, does not rise to the level of an actionable statement as it would not hold the plaintiffs up to scorn, ridicule or contempt "in the minds of any considerable and respectable segment of the community." *Draghetti v. Chmielewski,* 416 Mass. 808, 811, 626 N.E.2d 862, 866 (1994) (internal quotation and citation omitted). Moreover, statements of "pure opinion" are constitutionally protected and cannot form the basis of a defamation claim. *King v. Globe Newspaper Co.,* 400 Mass. 705, 708, 512 N.E.2d 241, 243 (1987). Here, the allegation is that after the plaintiffs had spoken at numerous Town Meetings over the years, a Selectman stated that he would not talk to the Tomasellis any more until their outstanding taxes were paid.[18] The plaintiffs do not challenge the fact that the

Town believes that sewer related charges due from the Tomasellis have remained unpaid for years. The defendant's expression of his opinion that such unpaid charges exist, and his statement that he would not talk to the Tomasellis any further, are not actionable.

Finally, this court notes "that statements made by public officials while performing their official duties are conditionally privileged." *Landry v. Mier,* 921 F.Supp. 880, 887 (D.Mass.1996). It is up to the plaintiffs to establish that the defendant abused this privilege. *Id.* at 888. Since the plaintiffs have not even addressed the merits of their tort claims in their opposition to the motion to dismiss, they have not put forth any argument to defeat the claim of privilege. (*See* Defs. Mem. at 33–36; Pls. Opp at 15). A fair reading of the Complaint establishes that the one stray remark made in the context of a decade long dispute does not state a claim for defamation.

### Intentional Infliction of Emotional Distress

■■■■■ A plaintiff must satisfy the following elements in order to establish a claim for intentional infliction of emotional distress: (1) the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct; (2) the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it. *Tetrault v.*

---

**18.** From the context of the Complaint, it appears that the reference to taxes was to the sewer fees and betterment assessment which, while admittedly in dispute, are also admittedly unpaid.

*Mahoney, Hawkes & Goldings,* 425 Mass. 456, 466, 681 N.E.2d 1189, 1197 (1997), and cases cited. It is undeniable from the Complaint that the plaintiffs have suffered a great deal of distress throughout their dispute concerning the assessment and sewer charges. However, the conduct of the Municipal Defendants in connection with imposing the disputed usage fees or betterment assessment does not rise to the level of being "extreme and outrageous." Rather, the defendants were carrying out their responsibilities to the Town, albeit in a manner objectionable to the plaintiffs. *See Willoughby v. Town of Tisbury,* 750 F.Supp.2d 374, 384 (D.Mass.2010) (as a matter of law, "[a] police officer's decision not to investigate a case cannot be considered 'utterly intolerable in a civilized community' " (citation omitted)). Moreover, there are no allegations to support a conclusion that the Municipal Defendants acted with the intent to cause harm, or should have known that their actions would cause severe harm.

▇▇ Liability for intentional infliction of emotional distress "cannot be founded upon mere insults, threats, or annoyances." *Cady v. Marcella,* 49 Mass.App. Ct. 334, 340–41, 729 N.E.2d 1125, 1131 (2000) (internal quotations omitted). Moreover, there cannot be recovery "for mere hurt feelings or bad manners[.]" *Santana v. Registrars of Voters of Worcester,* 398 Mass. 862, 867, 502 N.E.2d 132, 135 (1986). Thus, even though Selectmen meetings may have become contentious, the Complaint fails to allege any facts that would support a claim of intentional infliction of emotional distress against the Municipal Defendants.

### Abuse of Process

"The essential elements of the tort of abuse of process are (1) 'process' was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage." *Vittands v. Sudduth,* 49 Mass.App.Ct. 401, 406, 730 N.E.2d 325, 332 (2000) (internal quotation omitted). In the context of a cause of action for abuse of process, " 'process' refers to the papers issued by a court to bring a party or property within its jurisdiction." *Jones v. Brockton Pub. Mkts., Inc.,* 369 Mass. 387, 390, 340 N.E.2d 484, 486 (1975). These include writs of attachment, the process used to institute a civil action, and the process related to the bringing of criminal charges. *Id.* at 389–90, 340 N.E.2d at 486. In the instant case, there are no allegations that the Municipal Defendants engaged in any process against the plaintiffs. The abuse of process claim should be dismissed.

### Invasion of Privacy

▇▇ Massachusetts General Laws c. 214, § 1B creates a cause of action for individuals who have sustained an "unreasonable, substantial or serious interference with his privacy." *Nelson v. Salem State Coll.,* 446 Mass. 525, 536, 845 N.E.2d 338, 348 (2006) (citing Mass. Gen. Laws ch. 214, § 1B). The cause of action requires that "the invasion must be both unreasonable and substantial or serious." *Id.* Further, a plaintiff "must show that there was a gathering and dissemination of information which she contends was private." *Id.* (internal quotations and citations omitted). The Tomasellis' claim for invasion of privacy cannot stand because there are no alleged facts that the Municipal Defendants interfered with their privacy, or that they gathered and disseminated information that was private to the Tomasellis. Accordingly, the invasion of privacy claim should be dismissed.

### Intentional Interference with Advantageous Business Relations

▇▇ "There are four elements required to establish interference with ad-

vantageous business relations: (1) the plaintiff has a business relationship for economic benefit with a third party, (2) the defendants knew of that relationship, (3) the defendants interfered with that relationship through improper motive or means, and (4) the plaintiff's loss of business advantage resulted directly from the defendants' conduct." *Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc.*, 68 Mass.App. Ct 582, 608, 864 N.E.2d 518, 541 (2007). "The improper motive or means element requires proof of the defendant's actual malice, i.e. a spiteful, malignant purpose, unrelated to the legitimate corporate interest." *Id.* (internal quotations and citations omitted). Thus, in order to state a claim, the plaintiffs must allege "(1) the plaintiff was involved in a business relationship or anticipated involvement in one; (2) the defendant knew about the relationship; (3) the defendant intentionally and purposefully interfered with the relationship; and (4) the plaintiff suffered damage as a result." *Gouin v. Gouin*, 249 F.Supp.2d 62, 75 (D.Mass. 2003).

The Tomasellis' Complaint fails to allege any facts that would support a claim for intentional interference with business relations. According to the Complaint, the Town wrongfully shut down their restaurant business for non-payment of taxes. There is no allegation that the Municipal Defendants acted with intent to interfere with the plaintiffs' relationship with the Town or with their business customers. Rather, they were simply fulfilling their duties in connection with the assessment of betterment and sewer usage fees. That conduct is not properly the basis for an intentional interference claim. Accordingly, the claim of intentional interference with business relations against the Municipal Defendants should be dismissed.

### Misrepresentation and Negligent Misrepresentation

In order to sustain a claim of misrepresentation, "a plaintiff must show a false statement of material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiff's detriment." *Zimmerman v. Kent*, 31 Mass.App.Ct. 72, 77, 575 N.E.2d 70, 74 (1991). Further, the defendant does not need to know that a claim is false in order for the claim to survive. *See VMark Software, Inc. v. EMC Corp.*, 37 Mass.App.Ct. 610, 617, 642 N.E.2d 587, 593 (1994) (although software producer's assurances of product's capabilities were not intentional, they were relied upon). Negligent misrepresentation requires the plaintiff to show that the defendant "(1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information." *Golber v. BayBank Valley Trust Co.*, 46 Mass.App.Ct. 256, 257, 704 N.E.2d 1191, 1192 (1999) (internal punctuation, quotation and citation omitted); *see Fox v. F & J Gattozzi Corp.*, 41 Mass.App. Ct. 581, 587, 672 N.E.2d 547, 551 (1996) (explaining that negligent misrepresentation applies to false information between parties of business transaction). A most liberal reading of the Complaint establishes that the Tomasellis are complaining that the defendants misrepresented the cost of the sewer project. (*See, e.g.,* Compl. ¶ 82). This claim must fail since there are no allegations that the Tomasellis relied on any representations made by the Municipal Defendants—in fact the Complaint is clear that the plaintiffs challenged all their representations, including the representations concerning the costs of

the sewer project. Therefore, this claim should be dismissed.

For all these reasons, the state law claims fail to state a claim and should be dismissed.

## IV. *CONCLUSION*

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Municipal Defendants' Motion to Dismiss (Docket No. 158) be ALLOWED.[19]

March 25, 2013.

---

**19.** The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See* *Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–05 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).