**Scott M. EPSTEIN, Plaintiff, Appellant,**

**v.**

**C.R. BARD, INC., Defendant, Appellee,**

Futuremed Interventional, Inc.;
Crossbow Ventures, Inc.,
Defendants.

No. 06–1023.

United States Court of Appeals,
First Circuit.

Heard June 9, 2006.

Decided Aug. 25, 2006.

Gary E. Lambert, with whom Lambert & Associates was on brief, for appellant.

Andrew Good, with whom Good & Cormier was on brief, for appellee.

Before TORRUELLA, LYNCH and HOWARD, Circuit Judges.

TORRUELLA, Circuit Judge.

On October 15, 2003, plaintiff Scott M. Epstein ("Epstein") filed a ten-count complaint against Defendant C.R. Bard, Inc. ("Bard")[1] in the Suffolk County Superior Court, requesting damages arising from Bard's alleged breach of contract and infringement of Epstein's intellectual property rights. Bard removed the case to the United States District Court for the District of Massachusetts. On July 19, 2004, the district court dismissed Counts Two through Eight and Count Ten. On November 8, 2005, the district court dismissed Counts One and Nine. Epstein herein appeals from both decisions. We affirm.

## I.

Epstein is a designer and manufacturer of medical devices and an officer and principal of SME Design Technology, Inc. ("SME"). At some point (the brief lacks dates), Epstein entered into a business relationship with Bard, a developer, manufacturer, and marketer of medical technology. According to the complaint, Epstein worked in cooperation with Bard Urological Division ("BUD") to develop improvements to certain medical devices, including catheters. Epstein agreed to provide a minimum of 50,000 of the improved catheters—marketed as the "Tigertail"—to BUD at a price of $3.50 per catheter. Between December 23, 1994 and January 27, 1995, Epstein entered into a series of confidentiality agreements with Bard concerning the Tigertail technology.

At a later unspecified date, Epstein sought to sell or license his catheter technology to BUD. BUD declined and informed him that it was discontinuing the product line. But on October 10, 1999, Epstein wrote a letter ("the October 10, 1999 letter") to the president of BUD, noting that

> it has been brought to my attention that Tigertail™ is still available through Bard Urology, which under the circumstances is confusing to me. We have not supplied BUD with product for about one year and therefore I have to wonder where additional inventory has come form [sic]. This letter is an attempt to ascertain this information because it has been established and is well defined that the BUD Tigertail™ technology and concept is the intellectual property of SME Design. Any second source manufacture utilizing SME Design technology which includes material and process information would have to be licensed form [sic] and approved by SME Design.

On January 6, 2000, Epstein sent a follow-up letter ("the January 6, 2000 letter"), saying "I also want to voice my disappointment" regarding BUD's failure to "resolve this issue." Epstein observed that "I find myself dealing with people that I can not trust. The issue is more and more complicated now that my Trade Secrets have been divulged and the Soft Tip product line is successful." Finally, Epstein warned that if there was no satisfactory response from BUD within 30 days, "we will end up in court."

Epstein did not commence litigation until October 15, 2003. The complaint alleged damages under the following legal theories, listed by count: 1) breach of contract; 2) tortious interference with contractual relations; 3) misappropriation of

---

1. Epstein also originally named FutureMed Interventional, Inc. and CrossBow Ventures, Inc. as defendants. The district court dismissed all claims against these parties, and because Epstein does not appeal that decision, we do not consider them in this opinion.

trade secrets; 4) conversion; 5) unjust enrichment; 6) misrepresentation; 7) negligent misrepresentation; 8) fraudulent concealment; 9) breach of the implied covenant of good faith and fair dealing; and 10) violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11.[2]

Bard filed a Notice of Removal under 28 U.S.C. § 1441, and the case was entered in the United States District Court for the District of Massachusetts on November 17, 2003. On July 19, 2004, the district court dismissed Counts Two through Eight, and in a separate opinion issued on November 8, 2005, the district court dismissed Counts One and Nine.

## II.

The district court dismissed Epstein's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under that rule, a complaint can properly be dismissed "for failure of the pleading to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It is axiomatic that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). We review a Rule 12(b)(6) dismissal *de novo*, considering all well-pleaded facts in the complaint to be true. *Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*, 449 F.3d 85, 87 (1st Cir.2006).

### A. Statutes of Limitations

For statute of limitations purposes, the district court found that Epstein's cause of action accrued with the October 10, 1999 letter. Although Epstein claims that the district court's determination as to the accrual date was in error, we find no mistake.

■ The relevant statute of limitations periods are: three years for tort claims (Mass. Gen. Laws ch. 260, § 2A); four years for 93A violations (Mass. Gen. Laws ch. 260, § 5A); and four years for breach of contract claims governed by the Uniform Commercial Code (Mass. Gen. Laws ch. 106, § 2–725(1) and (2)).[3] The limitations period begins to run "when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct." *Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 557 N.E.2d 739, 741 (1990). The so-called "discovery rule" provides that the limitations period is tolled until "events occur or facts surface which would cause a reasonably prudent person to become aware that she or he had been harmed." *Felton v. Labor Relations Com'n*, 33 Mass.App.Ct. 926, 598 N.E.2d 687, 689 (1992). A plaintiff is considered to be on "inquiry notice" when the first event occurs that would prompt a reasonable person to inquire into a possible injury at the hands of the defendant. *Szymanski v. Boston Mut. Life Ins. Co.*, 56 Mass.App.Ct. 367, 778 N.E.2d 16, 20–21 (2002).

■ The district court found that Epstein was on notice that BUD was improperly using his technology as of the October 10, 1999 letter. In the letter, Epstein

---

**2.** Epstein also sought an injunction prohibiting Bard from designing, manufacturing, selling, distributing, and licensing products that were designed, developed, and produced using his technology. The district court did not address this issue separately, and because Epstein does not raise it on appeal, we do not consider it.

**3.** The district court found that the contractual relationship between Epstein and Bard is governed by the UCC, and Epstein does not appeal that determination.

stated in relevant part that "it has been brought to my attention that Tigertail ™ is still available through Bard Urology" despite the fact that "[w]e have not supplied BUD with product for about one year." In the same letter Epstein wrote that the situation "is confusing to me" because "it is well defined that the BUD Tigertail technology and concept is the intellectual property of SME Design" and any use of that property "would have to be licensed form [sic] and approved by SME Design." From this language, the district court concluded that Epstein "was clearly on notice that BUD was improperly using his technology since he knew that BUD continued to sell the Tigertail ™ and he, the sole supplier of the product, was not supplying it to BUD."

Epstein contends that the district court erred in its determination that the letter demonstrates that he was "clearly on notice" of a possible injury to his rights as of the October 10, 1999 letter because it was "merely an inquiry for more information." Epstein further maintains that the letter was a response to a "rumor" that might have been incorrect, and that he "neither knew, nor should have known that he had been harmed by Bard's conduct" as of October 10, 1999. He insists that "[o]nly after receiving a proper reply from Bard, or other reliable sources," could the statute of limitations begin to accrue. We find this argument to be wholly unpersuasive.

█ Epstein suggests that because he was uncertain as to the nature and extent of his injury when he wrote the October 10, 1999 letter, he could not have been on inquiry notice as of that date. This argument completely misunderstands the concept of inquiry notice. The discovery rule does not require that a plaintiff know the specific details pertaining to an alleged harm, but instead it imposes a "duty to investigate" on a plaintiff who has cause

for concern. *Doucette v. Handy & Harmon*, 35 Mass.App.Ct. 724, 625 N.E.2d 571, 573 (1994). Critically, knowledge of "every fact necessary to prevail on the claim" is not required to put the plaintiff on inquiry notice and trigger the accrual period. *Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*, 29 Mass.App. Ct. 215, 560 N.E.2d 122, 124 (1990). In this case, we have no doubt that Epstein had cause for concern. The October 10, 1999 letter makes plain that Epstein had reason to believe that Bard was making unauthorized use of his intellectual property. In the letter, Epstein made clear his belief that SME owned the Tigertail, and that Bard was selling it despite the fact that SME was not providing it. In his own brief, Epstein admits that, by writing the letter, he "acted as a reasonably prudent person in his situation would, he inquired into the truth of the matter." We agree that a reasonable person would have inquired into the issue and therefore find that the district court properly deemed Epstein to have been on inquiry notice as of October 10, 1999.

Epstein next argues that the district court erred by dismissing his cause of action as time-barred because the determination as to when he knew or should have known of his cause of action was a question of fact requiring resolution by a jury. He points out that "[i]n most instances, the question of when a plaintiff knew or should have known of its cause of action is one of fact that will be decided by the trier of fact." *Taygeta Corp. v. Varian Associates, Inc.*, 436 Mass. 217, 763 N.E.2d 1053, 1063 (2002). However, we have held that "[g]ranting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir.1998).

In this instance, Epstein's pleadings actually refer to and rely on the October 10, 1999 letter. He challenges only the district court's determination as to the legal significance of the letter. We find therefore that the district court did not err by dismissing Epstein's cause of action as time-barred without presenting it to a jury.

## B. Tolling

Epstein next argues that even if his cause of action accrued on October 10, 1999, his claims are not time-barred because the doctrine of fraudulent concealment applied to toll the statutes of limitations.[4] Fraudulent concealment is a tolling doctrine codified in Mass. Gen. Laws. ch. 260, § 12. Under that section,

> [i]f a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action.

The Supreme Judicial Court of Massachusetts has held that, in the absence of a fiduciary relationship, the statute of limitations may be tolled under this doctrine "if the wrongdoer ... concealed the existence of a cause of action through some affirmative act done with intent to deceive." *Puritan Med. Ctr., Inc. v. Cashman*, 413 Mass. 167, 596 N.E.2d 1004, 1010 (1992) (citation and internal quotation marks omitted). The district court found that the tolling doctrine did not apply because Epstein had not alleged that Bard acted affirmatively to deceive him. Epstein insists that determination was in error. In his

complaint, Epstein claims that Bard acted to deceive him by 1) affirmatively concealing certain material facts about its use of his intellectual property; and 2) "making false promises" regarding its intention to undertake "further inquiry" into his concerns, inducing Epstein to delay taking legal action in reliance upon these promises.

In his complaint, Epstein alleged that Bard concealed and suppressed "material facts" as to 1) Bard's "notification to the Food and Drug Administration pertaining to the BUD Soft Tip Catheter"; 2) Bard's "filing a Master Design History for their internal records"; 3) Bard's "resubmitting the 510k to the FDA to substantiate additional claims like radiopacity and tip strength"; 4) Bard's "dissemination to third parties of Plaintiff's technology, intellectual property and trade secrets"; 5) Bard's "use of Plaintiff's technology, intellectual property and trade secrets" without permission; and 6) Bard's "use of Plaintiff's technology, intellectual property, and trade secrets to apply for a Patent." There is no elaboration on any of these allegations.

Bard maintains that these allegations do not adequately support a claim for fraudulent concealment, and we agree. Under Rule 9(b) of the Federal Rules of Civil Procedure, it is incumbent upon the plaintiff "to plead with particularity the facts giving rise to the fraudulent concealment claim." *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1255 (1st Cir.1996). It is well-established that "[t]his rule entails specifying in the pleader's complaint the time, place, and content of the alleged false or fraudulent representations." *Powers v.*

---

4. Epstein erroneously pled fraudulent concealment as a separate cause of action (Count Eight) below. The district court noted the error but considered the issue as though it had been properly pled.

*Boston Cooper Corp.*, 926 F.2d 109, 111 (1st Cir.1991). Epstein's complaint falls far short. He fails to explain the time, place, content or significance of the "facts" that Bard allegedly concealed and entirely fails to explain how Bard's actions constituted fraud as to him.

 Epstein also contends that Bard affirmatively attempted to deceive him "by making false promises" regarding its intention to investigate the issues raised in Epstein's letters. It is Epstein's position that he acted in reliance upon "this delaying tactic" when he decided to postpone bringing suit. Specifically, Epstein explains that a letter from Bard's counsel dated November 10, 1999 indicated that "Bard seemed intent on initiating a dialogue," and although that letter stated that "Bard would come forward with affidavits to negate Mr. Epstein's assertions," ultimately "Bard entirely failed to forward any affidavits or answer any inquiries whatsoever." The district court did not find this argument persuasive, and neither do we. In Massachusetts, "[e]ven in cases of fraud ... there is no concealment by mere failure to disclose if the aggrieved party has full means of detecting the fraud." *Lynch v. Signal Finance Co. of Quincy*, 367 Mass. 503, 327 N.E.2d 732, 735 (1975). Here, Epstein patently had the means to detect the alleged fraud. Regardless of what Bard might have suggested in its November 10, 1999 letter, Epstein should have detected at some point during the nearly four years before he finally filed suit that no affidavits were forthcoming. In fact, Epstein's own January 6, 2000 letter makes plain that he did detect the alleged fraud. Writing again to the president of BUD, he noted that "I find myself dealing with people that I can not trust" and warned that if there was no satisfactory response from BUD within 30 days, "we will end up in court." In his own Opposition to Bard's Motion to Dismiss, Epstein pointed out that "[f]rom the first indicia of foul play, despite Mr. Epstein's best efforts to acquire the requisite knowledge to concretely establish his causes of action, Bard ... wholly failed to answer Mr. Epstein's inquiries." We do not address the question of whether the "tactics" Epstein describes could ever constitute fraudulent concealment because by definition, "from the first indicia of foul play," Epstein was on notice of the alleged fraud.

## C. Amending the Complaint

 Epstein finally argues that the district court committed reversible error by failing to afford him the opportunity to amend his complaint. In his Opposition to Bard's Motion to Dismiss, Epstein requested leave to amend his complaint under Rule 15(a) of the Federal Rules of Civil Procedure "in the event that the Complaint did not meet with the particularity requirements of Fed.R.Civ.P. 9(b)." Epstein claims that the district court should have interpreted this section of his Opposition as a motion to amend his complaint. The district court did not respond to the request, and Epstein now contends that the court "erroneously failed to allow Epstein even one opportunity to comply with the particularity requirements of Fed. R.Civ.P. 9(b)."

 Even assuming that the motion to amend was properly before the district court, Epstein faces an uphill battle. An order denying leave to amend will be overturned only where the district court has abused its discretion. *Manzoli v. C.I.R.*, 904 F.2d 101, 107 (1st Cir.1990); *Johnston v. Holiday Inns, Inc.* 595 F.2d 890, 896 (1st Cir.1979).

 Epstein correctly points out that there is a " 'liberal' amendment policy underlying Rule 15." *O'Connell v. Hyatt*

*Hotels of Puerto Rico,* 357 F.3d 152, 154 (1st Cir.2004). Rule 15(a) provides in relevant part that "a party may amend the party's pleading only by leave of court ... and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, although "a district court's denial of a chance to amend may constitute an abuse of discretion if no sufficient justification appears ... a district court need not grant every request to amend, come what may." *Correa–Martínez v. Arrillaga–Beléndez,* 903 F.2d 49, 59 (1st Cir.1990), *overruled on other grounds by Educadores Puertorriqueños en Acción v. Hernández,* 367 F.3d 61, 66 (1st Cir.2004). Although he now claims that the district court "failed to allow [him] even one opportunity to comply with the particularity requirements of Fed.R.Civ.P. 9(b)," we note that Epstein could have properly pled fraudulent concealment in his complaint. He has alleged no new facts or arguments to suggest that an amendment would have strengthened his case in the slightest. Critically, we have held that "[w]here an amendment would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters." *Correa–Martínez,* 903 F.2d at 59. We find no abuse of discretion.

## III.

For the foregoing reasons, we affirm the decision of the district court. Costs are awarded to the appellee.

*Affirmed.*