Nathaniel M. Gorton, United States District Judge
This case involves a suit by taxi medallion holders ("the Anoush plaintiffs" or "plaintiffs") in the Greater Boston area who allege that Uber Technologies, Inc. and Raiser, LLC (collectively "Uber" or "defendants") competed unlawfully and unfairly in the on-demand, ride-hail ground transportation market in and around Boston, Massachusetts.
I. Background
A. Regulatory Background
The City of Boston has traditionally regulated taxis under a set of municipal rules, ordinances and regulations ("Taxi Rules"), for which the Police Commissioner has the exclusive authority to regulate hackney carriages and hackney stands. In 2008, the Boston Police Department ("BPD") issued the Hackney Carriage Rules and Flat Rate Handbook ("Rule 403"), which regulates hackney carriage fares, medallions and hackney licenses, among other things. Rule 403 also incorporates a previously promulgated Vehicle for Hire Ordinance ("the Boston Ordinance"), which provides in relevant part:
no person, firm, or corporation driving or having charge of a taxicab or other private vehicle shall offer the vehicle for hire for the purposes of transporting, soliciting and/or picking up a passenger or passengers unless said person is licensed as a hackney driver and said vehicle is licensed as a hackney carriage by the Police Commissioner.
City of Boston Code 16-15.05: Vehicle for Hire Ordinance; see also Appendix I to Rule 403. The Hackney Department of the BPD is largely charged with implementing these Taxi Rules.
B. Factual Background
In June, 2013, following separate conversations between Uber management and the Hackney Department on the one hand, and Uber and senior staff in the Mayor's office on the other, Uber launched its own peer-to-peer ("P2P") application, UberX. With respect to UberX, Uber did not require its drivers to comply with Rule 403 or the Boston Ordinance because its management believed that the Taxi Rules applied only to taxi cabs, not transportation *99 network companies ("TNCs") such as Uber.
Shortly thereafter, uniformed officers began ticketing Uber drivers for violating a variety of municipal and state regulations, including the Boston Ordinance. From roughly July, 2013, to January, 2015, Uber acknowledged hundreds of police citations issued to UberX drivers. Although some drivers successfully challenged those tickets in court, Uber routinely reimbursed all other charged drivers. During this same time period, while Uber reimbursed its drivers for the cost of tickets, the Mayor's office made somewhat contradictory statements suggesting that the Taxi Rules did not apply to TNCs.
This regulatory uncertainty persisted until August, 2016, when the Massachusetts legislature enacted the Transportation Network Companies Act ("the TNC Act"). See M.G.L. c. 159A ½. The TNC Act preempts municipalities from regulating TNCs through local municipal rules and vests regulatory jurisdiction in the Massachusetts Department of Public Utilities and the Massachusetts Port Authority. See id. at § 10.
Following this Court's order which allowed, in part, and denied, in part, defendants' motion to dismiss (Docket No. 96), the parties submitted cross motions for summary judgment with respect to plaintiffs' claims for unfair competition from June, 2013, to August, 2016 ("the alleged unlawful conduct period"). Plaintiffs have moved for partial summary judgment on their claim of liability (under Chapter 93A and common law) and defendants' § 3 and superseding cause defenses. Defendants have moved for summary judgment on plaintiffs' claim of liability (under Chapter 93A and common law) and on its res judicata and § 3 defenses.
For the reasons set forth below, both parties' motions will be denied (with the exception of plaintiffs' motion for partial summary judgment on defendants' § 3 defense) and the Court will promptly convene a bench trial in accordance with this opinion.[1]
II. Legal Analysis
A. Legal Standard
The role of summary judgment is to assess the proof in order to see whether there is a genuine need for trial. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). The burden is on the moving party to show, through the pleadings, discovery and affidavits, that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law". FED. R. CIV. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party". Id.
If the moving party has satisfied its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most favorable to the nonmoving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary *100 judgment is appropriate if, after viewing the record in the nonmoving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23, 106 S.Ct. 2548.
When parties file cross-motions for summary judgment on a particular count, the Court must assess each motion separately and determine whether there is any genuine issue of material fact and whether either movant is entitled to judgment. Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n. 4 (1st Cir. 1997).
B. Cross Motions for Summary Judgment
1. Chapter 93A Liability
To be successful under M.G.L. c. 93A, § 11, plaintiffs must establish 1) that defendants engaged in an unfair method of competition or committed an unfair or deceptive act or practice, as defined by M.G.L. c. 93A, § 2, or the regulations promulgated thereunder; 2) a loss of money or property suffered as a result and 3) a causal connection between the loss suffered and the defendants' unfair or deceptive method, act or practice. Auto Flat Car Crushers, Inc. v. Hanover Ins. Co., 469 Mass. 813, 17 N.E.3d 1066, 1074-75 (2014).
a. Liability under § 2(c)
First, the Court finds that plaintiffs are not entitled to summary judgment on liability based on § 2 per se unfairness. Pursuant to § 2, paragraph (c) of Chapter 93A, the Massachusetts Attorney General promulgated 940 C.M.R. § 3.16, which provides that an act or practice violates Chapter 93A, § 2 if:
[i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection.
940 C.M.R. § 3.16(3).
While this Court finds that the Taxi Rules were designed for the public's health, safety and welfare, the First Circuit Court of Appeals ("First Circuit") has held that § 3.16 does not apply to business-to-business disputes under § 11. See LimoLiner, Inc. v. Dattco, Inc., 809 F.3d 33, 36 (1st Cir. 2015) (concluding that § 3.16 does not apply to business-to-business disputes) but see Limoliner, Inc. v. Dattco, Inc., 475 Mass. 420, 57 N.E.3d 969, 976 n.11 (2016) (noting the general dispute among courts as to whether the Attorney General's regulations pursuant to Chapter 93A apply only to consumers).
Accordingly, this Court declines to find, as a matter of law, that Uber's failure to comply with the Taxi Rules constitutes a per se violation under § 2(c).
b. Unfair Practices and Competition
Having disposed with the § 3.16 claim for per se unfairness, the Court turns to the parties' respective arguments on whether Uber's conduct during the alleged unlawful conduct period falls
within at least the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to consumers.
Exxon Mobil Corp. v. Attorney Gen., 479 Mass. 312, 94 N.E.3d 786, 792 (2018) (defining unfairness under 93A).
i. Failure to Comply with Taxi Rules
Plaintiffs argue that Uber engaged in unfair practices because Uber and its drivers did not comply with Rule 403. Neither the Malden nor the Katin decisions concludes that an unlicensed participant necessarily *101 commits an unfair trade practice, and thus, plaintiffs' argument that the violation of the Taxi Rules, alone, constitutes unfair trade practice is unavailing. See Malden Transportation, Inc., 286 F. Supp. 3d at 274 ; Katin v. Nat'l Real Estate Info. Servs., Inc., No. CIV. A. 07-10882DPW, 2009 WL 929554, at *10 (D. Mass. Mar. 31, 2009) ("engaging in the unauthorized practice of law may constitute an 'unfair method of competition' within the meaning of Chapter 93A") (emphasis added).
Accordingly, plaintiffs are not entitled to summary judgment on Chapter 93A liability solely on the basis of the alleged Taxi Rule violations.
ii. Egregiousness
With respect to the ultimate issue of whether Uber competed unfairly under Chapter 93A, i.e., with "egregiousness" or "rascality" during the alleged unlawful conduct period, the parties have set forth compelling and competing narratives. See Baker v. Goldman, Sachs & Co., 771 F.3d 37, 51 (1st Cir. 2014) (finding that plaintiffs must prove more than "mere negligence"; they must prove "extreme or egregious" negligence).
On one hand, plaintiffs submit that Uber competed unfairly because it knowingly violated the Taxi Rules by launching UberX without appropriate hackney licenses and drivers (and thus was able to price out taxi cabs) and did so with a callous disregard for those rules and for the regulators who enforced them. Defendants respond that their strategy in entering the market under tacit regulatory approval was done in good faith and as a result of their inventive and disruptive competition. They buttress this argument by pointing to internal communications and public communications disseminated by City decision makers.
After reviewing the totality of the evidence, this Court finds that Uber acted with reckless disregard for the City's Taxi Rules. They reimbursed their drivers for hundreds of tickets and told them that Uber was legal, despite acknowledging otherwise in private circles.
The Court notes that it will consider ticket evidence in this case, notwithstanding a purportedly contrary decision of the Massachusetts Supreme Judicial Court ("the SJC") in LePage v. Bumila, 407 Mass. 163, 552 N.E.2d 80 (1990). In the LePage decision, the SJC held that the decision to pay a $40 traffic citation and to forgo a judicial appeal does not bear a sufficient relationship to whether the paying party acquiesces in or admits to the charges recited in the citation. Id. at 82. Here, the evidence that Uber paid off hundreds of tickets apparently is not intended to show that Uber in fact violated the rules but rather demonstrates that Uber was aware that the Hackney Department and the Police Commissioner were enforcing the rules against TNCs and that Uber, nevertheless, disregarded that enforcement.
Moreover, Uber avoided the costs of complying with those regulations and capitalized on the lack of enforcement by engaging in "surge pricing". In sum, there is no good faith dispute that Uber violated the Taxi Rules.
Uber's violation of the Taxi Rules is, however, neither necessary nor sufficient to prove a Chapter 93A claim. See Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69 (1st Cir. 2009). Rather, the guiding principle is whether Uber's actions would, under the totality of the circumstances,
raise an eyebrow of someone inured to the rough and tumble of the world of commerce.
Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 396 N.E.2d 149 (1979) (Kass, J.).
*102 Under this standard, the Court reserves its finding of liability because Uber has proffered some evidence that management acted in good faith when it relied on statements made by City decision makers during the alleged unlawful conduct period. Thus, because neither party has demonstrated as a matter of law that Uber did or did not act egregiously, the cross motions for summary judgment on Chapter 93A liability will be denied.
c. Actual Damages
Next, defendants argue that plaintiffs cannot establish actual damages because 1) they have no protectable property interest in the book value of taxi medallions, 2) even if taxi medallions are "financial assets", only those plaintiffs who suffered an actual loss can recover and 3) purely economic damages are not recoverable under Chapter 93A.
Under § 11, plaintiffs must establish a "loss of money or property" resulting from defendants' unfair practices or competition. M.G.L. c. 93A, § 11. Here, the Court finds that plaintiffs have demonstrated actual economic damages (not property damages) sufficient to survive summary judgment for the following reasons.
First, while plaintiffs likely have a property interest in the medallions themselves, they do not have a property interest in the diminishing value of those medallions. See Bos. Taxi Owners Ass'n, Inc. v. City of Bos., 180 F. Supp. 3d 108, 117 (D. Mass. 2016) ("the aggregation of the rights of all medallion owners does not create a right that is new in kind, the right to exclude non-medallion owners from the market."). Plaintiffs' claims of reduced medallion value represent alleged economic injury, not a loss of property under Chapter 93A.
Next, the Court finds defendants' Rule 10b-5 analysis with respect to financial assets to be instructive but ultimately unpersuasive. The more vigorous causation requirement in Rule 10b-5 cases is rooted in the concept that a stock can recover in price, even after the unlawful conduct has subsided, and thus any unrealized loss (i.e., from not selling the stock) is speculative. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 734-35, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Here, the experts agree that the structural change in the transportation-for-hire market is permanent and thus the depression in medallion values is not temporary or even speculative. Accordingly, the Court finds that the plaintiffs may recover for any loss of value proven during the alleged unlawful conduct period.
Finally, this Court agrees with plaintiffs that economic damages are recoverable under M.G.L. c. 93A, § 11. See Cummings v. HPG Int'l, Inc., 244 F.3d 16, 26, n.3 (1st Cir. 2001). Moreover, this Court finds that the decision in Canal Elec. Co. v. Westinghouse Elec. Co., 973 F.2d 988 (1st Cir. 1992) is inapposite. In Canal, the First Circuit rejected a third-party consumers' Chapter 93A claim because their alleged harm flowed from defendants' negligence with respect to the plaintiff, not the third-party consumers. Id. at 998-99. Not only is that case factually distinguishable in that the third-party harm stemmed from a contractual relationship (not present here), but plaintiffs in this case have alleged that Uber acted egregiously in disregarding applicable Taxi Rules. Thus, Uber's claim for an economic recovery bar under § 11 is unavailing.
2. Common Law Claims
a. Unfair Competition
Plaintiffs argue that they are entitled to summary judgment on their common law unfairness claim for the same reasons set *103 forth in their Chapter 93A claims. Because this Court has not found that Uber violated Chapter 93A, § 11 as a matter of law, plaintiffs' motion for summary judgment on its common law claim must fail as well.
Defendants rejoin that they are entitled to summary judgment because 1) plaintiffs' claims are time-barred and 2) common law unfair competition claims are limited to consumer confusion cases. This Court disagrees because, first, there is a dispute over when the alleged injury occurred and thus when the action accrued (see Epstein v. C.R. Bard, Inc., 460 F.3d 183, 187 (1st Cir. 2006) ) and second, Massachusetts courts have long held that unfair competition is not limited to consumer confusion. See A.B. & C. Motor Trasnp. Co. v. Dep't of Pub. Utilities, 327 Mass. 550, 100 N.E.2d 560, 561 (1951) (collecting cases) (holding that unlicensed competition in violation of statutory licensing requirements provides a basis for liability).
As such, this Court declines to dismiss the common law claim as a matter of law.
b. Aiding and Abetting and Conspiracy
Nor will the Court dismiss plaintiffs' claims for aiding and abetting and/or conspiracy as time-barred for the reasons set forth previously. On the merits, the Court finds that because the underlying tort necessary to prevail on aiding and abetting and/or conspiracy grounds remains in dispute, neither party is entitled to summary judgment on those common law claims.
3. Section 3 Safe Harbor Defense
Section 3 of Chapter 93A functions as a safe harbor for liability, stating that
[n]othing in this chapter shall apply to transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States.
Defendants bear the heavy burden of proving an exemption to liability under § 3. They must show more than the "mere existence of a related or even overlapping regulatory scheme" and that the scheme "affirmatively permits the practice which is alleged to be unfair or deceptive". Aspinall v. Philip Morris, Inc., 453 Mass. 431, 902 N.E.2d 421, 424 (2009).
a. Regulatory Scheme
Plaintiffs argue that the City's regulatory forbearance (i.e., its lack of enforcement against other ridesharing companies prior to Uber's launch) is insufficient to prompt safe harbor exemption. This Court agrees and finds that the lack of enforcement prior to Uber's entry into the market does not constitute affirmative permission. See Fleming v. Nat'l Union Fire Ins. Co., 445 Mass. 381, 837 N.E.2d 1113, 1121 (2005).
Uber then argues that once the Massachusetts Department of Transportation ("MassDOT") clarified 540 C.M.R. § 2.05 to include TNCs, a statutorily-authorized regulator had permitted the conduct at issue. Uber's reliance on O'Hara v. Diageo-Guinness, USA, Inc., 306 F. Supp. 3d 441 (D. Mass. 2018) for that proposition, however, misses the mark. In O'Hara, the Court found that the federal regulation explicitly gave the regulating entity authority to determine that the consumer label is not deceptive, which was the subject of the Chapter 93A claim. Id. at 455. Uber has not demonstrated that the MassDOT rule amendment gave the Commonwealth the explicit authority to determine whether TNCs are subject to municipal rules. Thus, consistent with Aspinall, this Court finds that Uber has only shown the "mere existence of a related or even overlapping regulatory scheme that covers the transaction". Aspinall, 902 N.E.2d at 424.
*104 b. Officer Acting with Statutory Authority
Plaintiffs argue that neither Mitchell Weiss, the Chief of Staff for Mayor Thomas Menino, nor Mark Cohen, the Director of the Hackney Department, gave Uber affirmative permission to launch and even if they purported to do so, they lacked the requisite authority. Uber responds that Commissioner Davis determined that neither Uber nor Lyft violated the Taxi Rules, Hackney Captain Steven McLaughlin testified to that effect and this Court should give substantial deference to those interpretations.
Notwithstanding the fact that Commissioner Davis was not the Commissioner during the entire period of alleged unlawful conduct (and subsequently took a paid consulting position with Uber), defendants have not demonstrated that the then-Commissioner's opinion had long been a matter of "public record and discussion". Cf. Udall v. Tallman, 380 U.S. 1, 17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965) ("The Secretary's interpretation had, long prior to respondents' applications, been a matter of public record and discussion.").
As plaintiffs point out, Uber has not demonstrated that Commissioner Davis conveyed his opinion to Uber during the period of alleged unlawful conduct. Nor can Uber plausibly rely on arguments set forth in its motion to dismiss in a preceding action that was filed during the tenure of Commissioner Evans. That motion to dismiss was filed in May, 2015, and suggests that whether Rule 403 applies to TNCs is "at best, open to interpretation". Nothing about those limited statements constitutes an affirmative safe harbor exemption as a matter of law.
i. Misplaced Reliance on Caselaw
First, the new testimony of Commissioner Davis does not bear upon this Court's prior ruling with respect to the deference doctrine set forth in Dial A Car, Inc. v. Transportation, Inc., 82 F.3d 484 (D.C. Cir. 1996). Not only is the Court's justification for abstention in that case rooted in federalism concerns, which do not apply here, but also the subject Taxi Rules here are "so clear on [their] face that no good faith doubt concerning [their] interpretation" is possible. Id. at 489 n.3. As such, defendants' safe harbor claim rises and falls with their contention that government officials gave affirmative permission to launch during the alleged unlawful conduct period. It is not dependent on whether this Court gives deference to a particular interpretation of a regulator.
Next, Uber's extensive reliance on the O'Hara and Dorrian decisions to support the testimony of Commissioner Davis is also misplaced. In O'Hara, the regulating entity certified that the label of a particular product did not violate federal law, and thus, the Court found that plaintiffs could not subsequently claim that those approved labels were deceptive under Chapter 93A. O'Hara, 306 F. Supp. 3d at 463. Here, Uber cannot point to a similar affirmative and particularized approval. To be clear, this Court is not suggesting that formal rulemaking is required to satisfy § 3, but alleged oral statements by a Commissioner after-the-fact or limited arguments in a motion to dismiss do not rise to the level of particularized approval. Cf. id. at 465.
Moreover, Dorrian is factually distinguishable because, in that case, prior to the alleged unfair conduct, the regulating agency issued written advisory opinions and amendments to regulations concluding that the defendants did not need a license to conduct business. Dorrian v. LVNV Funding, LLC, No. SUCV142684BLS2, 2017 WL 2218773, at *13 (Mass. Super. Mar. 30, 2017), vacated, *105 479 Mass. 265, 94 N.E.3d 370 (2018). The Massachusetts appeals court subsequently held that, although the agency lacked the statutory authority to issue such an opinion, its apparent authority, based on its consistent written opinions on the issue for a number of years, constituted affirmative permission and thus defendants were entitled to a § 3 defense. Id. at *2, *13-14. By contrast, Uber has produced no evidence that any regulator with authority (apparent or otherwise) issued a similar written opinion affirmatively approving their conduct.
Because defendants have failed to proffer any evidence that Uber received written approval during the alleged unlawful conduct period, plaintiffs' motion for partial summary judgment on defendants' § 3 safe harbor defense will be allowed.
C. Superseding Cause
Plaintiffs argue that the TNC Act is not a superseding cause of their damages because the enactment of that statute was reasonably foreseeable and was not independent from Uber's conduct (i.e., Uber leveraged its drivers and riders to lobby the Massachusetts legislature). Uber responds that plaintiffs' arguments are mistaken because 1) plaintiffs have failed to show "but for" and proximate cause and 2) Uber's lobbying efforts are protected by the First Amendment.
At this stage of the litigation, the Court is satisfied that plaintiffs have made a threshold showing of causation to survive summary judgment. They have failed, however, to demonstrate conclusively that the TNC Act is not a superseding cause. An intervening cause rises to the level of a superseding cause, thus destroying proximate cause in both negligence and intentional torts, as determined by the following factors:
1) the type of harm brought about, 2) the extraordinariness of the intervening force under the circumstances, 3) the causal relationship between the defendant's actions and the intervening force, 4) the role of a third person, 5) the third persons' liability to the plaintiff, and 6) the wrongfulness of the third person's conduct.
Springer v. Seaman, 821 F.2d 871, 877 (1st Cir. 1987), abrogated on other grounds by Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).
Here, plaintiffs have focused on inapplicable malpractice law as opposed to the noted Springer factors. Moreover, because there is a dispute as to what Uber's role was in the enactment of the TNC Act, the Court declines to find as a matter of law that the TNC Act was not a superseding cause.
D. Res Judicata
1. Waiver
Uber avers that this case should be dismissed on the basis of res judicata. Normally, res judicata is waived if not raised in the answer, unless
(i) the defendant asserts it without undue delay and the plaintiff is not unfairly prejudiced by any delay ... or (ii) the circumstances necessary to establish entitlement to the affirmative defense did not obtain at the time the answer was filed.
Davignon v. Clemmey, 322 F.3d 1, 15 (1st Cir. 2003).
Here, Uber contends that plaintiffs are not unfairly prejudiced because they were fully aware of the prior litigation, Boston Cab Dispatch, Inc. and EJT Management, Inc. v. Uber Technologies, Inc., No. 13-cv-10769-NMG ("Boston Cab"), and were actively involved in that litigation. Yet, despite being a party to the *106 Boston Cab litigation and cognizant of the relationship between EJT Management and the Anoush plaintiffs, Uber did not assert res judicata as an affirmative defense in its answer, motion to dismiss, initial disclosures or discovery responses. Moreover, to the extent Uber submits that asserting an estoppel defense in its answer is sufficient to put plaintiffs on notice of a res judicata defense, that position has been specifically rejected by the First Circuit. See Davignon, 322 F.3d. at 15. Thus, the viability of Uber's res judicata defense is tenuous.
2. Merits
Even if Uber has not waived its res judicata defense, to prevail, it must prove 1) final judgment on the merits in an earlier action, 2) identity of the cause of action in both the earlier and later suits and 3) identity of parties or privies in the two suits. Havercombe v. Dep't of Educ. of Com. of P.R., 250 F.3d 1, 3 (1st Cir. 2001).
Uber proclaims that the Boston Cab plaintiffs are in privity with the Anoush plaintiffs because 1) the Boston Cab plaintiffs represented the interests of the medallion owners (i.e., the Anoush plaintiffs), 2) EJT Management and the Anoush plaintiffs have overlapping ownership and management, 3) President Mary Tarpy made corporate decisions for EJT and does so now on behalf of the Anoush plaintiffs and 4) the parties used the same Rule 30(b)(6) witness, accountant John Weeden.
Plaintiffs reply that Uber has not demonstrated how any of the six exceptions to non-party preclusion applies and contests defendants' assertions on the basis that 1) the management agreement between EJT and the Anoush plaintiffs did not authorize EJT to file a lawsuit on behalf of the Anoush plaintiffs, 2) EJT has no legal interest in the medallions owned by the Anoush plaintiffs and 3) there is no evidence that the Anoush plaintiffs exercised any control over the Boston Cab litigation.
Because there is a material dispute with respect to privity, the Court will not dismiss this suit on res judicata grounds. See Taylor v. Sturgell, 553 U.S. 880, 892-93, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008).
ORDER
For the foregoing reasons, plaintiffs' motion for partial summary judgment on defendants' Chapter 93A, § 3 affirmative defense (Docket No. 367, Part II) is ALLOWED . Otherwise, the cross motions for summary judgment (Docket Nos. 357, 367) are DENIED .
At the jury-waived trial, which will be subject to time limitations, the Court will consider the following issues:
1) Whether Uber acted egregiously when it violated the Taxi Rules in violation of Chapter 93A;
2) Whether plaintiffs suffered economic damages;
3) Whether Uber's alleged unfairness/egregious conduct caused plaintiffs' damages;
4) Whether Uber aided and abetted unfair conduct and/or engaged in a civil conspiracy to compete unfairly;
5) Whether Uber adequately provided plaintiffs with notice of its res judicata defense; and
6) Whether the EJT plaintiffs and the Anoush plaintiffs are in privity.
Furthermore, a pre-trial conference will be held on Wednesday, July 17, 2019, at 11:00 A.M. and the bench trial will commence on Thursday, July 18, 2019, at 9:00 A.M.
So ordered.

The parties have stipulated 1) that the summary judgment motions pertain only to the Anoush plaintiffs because the other consolidated plaintiffs have reached a tentative settlement agreement and 2) to a bench trial before this Court.